DONALD M. YAMAGUCHI, Plaintiff-Appellant, *v.* THE QUEEN'S MEDICAL CENTER, and RICHARD S. DODGE, M.D., Defendants-Appellees, and JOHN DOES I to L, including each and every number between I and L, inclusive, Defendants

NO. 7281

(CIVIL NO. 48722)

JULY 13, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED TEMPORARILY

OPINION OF THE COURT BY LUM, J.

Plaintiff-appellant Donald Yamaguchi appeals from summary judgment entered in favor of defendants-appellees The Queen's Medical Center ("Queen's Hospital") and Dr. Richard S. Dodge, dismissing appellant's medical malpractice action against them as barred by the statute of limitations applicable to medical tort proceedings contained in HRS § 657-7.3 (1976). From what we have ascertained to be the pertinent factual and legal issues concerning the statute, and from the state of the record herein, however, we conclude that summary judgment was improper and remand this case for trial.

I.

Appellant, then sixteen years of age, entered Queen's Hospital on December 9, 1947 for treatment of an ailing right knee. Dr. Richard Dodge performed a surgical biopsy on the joint,[1] and the specimen obtained was diagnosed as malignant bone cancer by Dr. Sumner Price of the hospital's pathology laboratory. Queen's Hospital radiologists Drs. L. L. Buzaid and G. P. Van Nuys adminis-

---

[1] Dr. Dodge claims that he was acting as an intern at the time under the direct supervision of Dr. Nelson Hatt, appellant's surgeon and treating physician, as he was not licensed to practice medicine in the state until June, 1948. Dr. Hatt, since deceased, is not a named defendant in this suit. Dr. Dodge died one year after filing his answering brief.

tered radiation therapy to the diseased area on eight separate occasions between 1948 and 1949.

Apparently unbeknownst to appellant, Queen's Hospital pathologist Dr. W. Harold Civin, re-examining tissue taken from the knee,[2] disagreed with the original diagnosis and concluded in 1951, 1955 and again in 1958 that the abnormal mass in appellant's knee was a benign tumor. Dr. Civin recorded his findings in three reports stored in the hospital's files, and appellant alleges that neither the hospital nor any physician made an effort to inform him of the new diagnosis or to otherwise follow up on the matter.

Appellant did not learn of the alleged misdiagnosis until 1961 when physicians at the Mayo Clinic informed him that his condition had been erroneously assessed.[3] No signs of trouble appeared, however, until November, 1975, when appellant suffered a slight injury to his knee. Appellant's physicians advised him the following month that he had developed malignant post-radiation cancer in his right thigh bone, and that amputation of his entire right leg was imperative. Appellant alleges that this was the first time he was informed of the potentially dangerous consequences of radiation treatment and of the fact that he had been administered an unnecessary and excessive dose of radiation in 1948 and 1949.[4]

Appellant's right leg was amputated in December, 1975, and he commenced his action six months later on June 30, 1976 against Queen's Hospital, Dr. Dodge[5] and approximately fifty unidentified defendants for damages flowing primarily from the alleged negligent misdiagnosis and the unnecessary and negligently administered treatment. The circuit court granted appellees' motions for

---

[2] Why Dr. Civin, who was not appellant's treating physician or surgeon in 1948 and 1949, repeated the tissue tests after treatment had been administered is not apparent from the record.

[3] Appellant, a 1957 Harvard Medical School graduate, was a resident physician in training at the Mayo Clinic at the time.

[4] Records of appellant's radiation therapy reveal that he was given a total of 12,000 roentgen units, which appellant contends was three times the standard dose administered in similar cases, as well as unnecessary in the first place since the disease as originally diagnosed was known to be unresponsive to radiation.

[5] *See* note 1 *supra.*

summary judgment in November, 1978, however, agreeing with them that the statute of limitations set forth in HRS § 657-7.3 had run on appellant's claim.

Appellant's principal contention on appeal is that the statute of limitations was tolled by appellees' (essentially the hospital's) failure to disclose information of alleged acts of negligence constituting the basis of his claim, or at least that an issue of material fact concerning appellees' concealment of incriminating information remained, precluding summary judgment.

## II.

The statute at the heart of this controversy, HRS § 657-7.3 (1976), provides that

> (n)o action for injury or death against a chiropractor, clinical laboratory technologist or technician, dentist, naturopath, nurse, nursing home administrator, dispensing optician, optometrist, osteopath, physician or surgeon, physical therapist, podiatrist, psychologist, or veterinarian duly licensed or registered under the laws of the State, *or a licensed hospital as the employer of any such person,* based upon such person's alleged, professional negligence, or for rendering professional services without consent, or for error or omission in such person's practice, *shall be brought more than two years after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, but in any event not more than six years after the date of the alleged act or omission causing the injury or death. This time limitation shall be tolled for any period during which the person had failed to disclose any act, error, or omission upon which the action is based and which is known or through the use of reasonable diligence should have been known to him or as provided in section* [671-18].

(emphasis added).[6] Enacted in 1973, this legislation created a statute

---

[6] In 1977, the legislature deleted the closing phrase "or through the use of reasonable diligence should have been known to him or as provided in section [671-18]." The Senate and House Committees on Judiciary, suggesting the change, were motivated by the possibility that the deleted language, allowing constructive knowledge of negligent acts to toll the statute, would effectively abolish any time

of limitations specifically for medical malpractice actions which theretofore had been governed by the two-year statute of limitations set forth in HRS § 657-7 applicable to property damage and personal injury claims.[7] The statute also codified the rule this court adopted in construing HRS § 657-7 in *Yoshizaki v. Hilo Hospital,* 50 Haw. 150, 433 P.2d 220 (1967), that the statutory period does not begin to run on medical malpractice claims until the plaintiff discovers, or by acting reasonably should have discovered, "the injury." *Jacoby v. Kaiser Foundation Hospital,* 1 Haw. App. 519, 523, 622 P.2d 613, 617 (1981).[8] At the same time, however, the legislature was not blind to the rising cost of malpractice insurance and problems of proof attendant with stale claims, both of which were subject to exacerbation under an open-ended "discovery rule." *See* House Stand. Comm. Rep. No. 455, 7th Haw. Leg., 1st Sess., *reprinted in* House Journal 947 (1973); Senate Stand. Comm. Rep. No. 665, 7th Haw. Leg., 1st Sess., *reprinted in* Senate Journal 907 (1973).[9] It

---

limitation on the bringing of medical malpractice actions. *See* Senate Stand. Comm. Rep. No. 538, 9th Haw. Leg., 1st Sess., *reprinted in* Senate Journal 1082, 1084 (1977); House Stand. Comm. Rep. No. 861, 9th Haw. Leg., 1st Sess., *reprinted in* House Journal 1704, 1706 (1977).

[7] HRS § 657-7 (1976) requires that "(a)ctions for the recovery of compensation for damage or injury to persons or property . . . be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13 ['infancy, insanity, imprisonment']."

[8] *See* note 10 *infra.*

[9] The House Judiciary Committee, reporting on H. B. No. 880 (which was to become Act 92, 1973 SLH 126), stated as follows:

The practical effect of [the *Yoshizaki*] decision was to increase the cost of malpractice insurance. This was necessitated by the fact that insurers were required to hold in reserve funds for an indeterminable period of time. With the increase in premiums, costs to patients reportedly increased.

This bill proposes to limit the time within which the action may be initiated to six years after the date of the operation or two years after the injured person discovers the injury, whichever occurs sooner. Testimony presented indicated that this would have a tendency of lowering the cost to doctors of maintaining malpractice insurance in that insurers could hold their reserves for a fixed period of time.

. . . .

Your Committee believes that the six year limitation wherein a medical malpractice action may be brought is reasonable. It was also brought to your Committee's attention that oftentimes, because of passage of a great number of years,

imposed a six-year outer limitation on all suits computed from the date of the alleged act or omission regardless of whether the injury caused thereby had or should have been discovered by that time, which period would be tolled only by the defendant's withholding of information of alleged negligent conduct known or which should have been known to him.

At the outset, appellant questions the very applicability of HRS § 657-7.3 to his action since the alleged torts occurred in 1949, twenty-four years prior to the statute's enactment. His argument in favor of applying the general tort statute of limitations in HRS § 657-7 rests upon the well-established rule of construction forbidding the retrospective operation of statutes in the absence of clearly expressed contrary legislative intent. *See Clark v. Cassidy,* 64 Haw. 74, 77, 636 P.2d 1344, 1346 (1981); *Graham Construction Supply, Inc. v. Schraeder Construction, Inc.,* 63 Haw. 540, 546, 632 P.2d 649, 653 (1981); HRS § 1-3 (1976). We find no impediment to application of this rule to HRS § 657-7.3 to require that the statute be given prospective effect only, as there exists no indication in either the statutory language or the accompanying committee reports that the legislature intended a different result. *See* House Stand. Comm. Rep. No. 455, *supra;* Senate Stand. Comm. Rep. No. 665, *supra.* The problem then becomes one of identifying the event in the lawsuit's evolution, beginning with the injurious act and ending with the filing of the complaint, which is determinative for the purposes of ascertaining when a statute of limitations in effect applies.

The Idaho Supreme Court in *Stoner v. Carr,* 97 Idaho 641, 550 P.2d 259 (1971) was faced with a malpractice action brought on December 24, 1974 for damages arising from the alleged negligence of a physician in leaving a surgical needle in plaintiff's abdomen on March 9, 1971. The needle was discovered on July 31, 1973 and surgically removed. Defendants argued that the statute of limita-

---

records are either destroyed or lost, people pass away and the question of proof becomes difficult if not impossible. Six years should provide the person allegedly injured sufficient time to discover whether he has suffered any injury at all, and while memories are still fresh, records still available and reasonable means of proof still exist.

House Stand. Comm. Rep. No. 455, *supra.*

tions for malpractice actions, as amended in 1971 to include a one-year limitation for claims based on the leaving of foreign objects in the body, applied rather than the pre-1971 version setting forth a two-year limitation for medical tort suits generally. Disagreeing with plaintiff's assertion that application of the 1971 amendment to her claim would be retroactive since the alleged wrong occurred prior to its enactment, the plurality explained that " '[a] law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; rather, a law is retroactive only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage.' " 550 P.2d at 261, *quoting Arnold v. Woolley*, 95 Idaho 604, 605, 514 P.2d 599, 601 (1973). It accordingly ruled that the statute of limitations in force at the time the plaintiff's cause of action accrues, rather than that effective at the time of the wrongful act where the two fail to coincide, is that which defines the governing statutory period. Since under Idaho's "discovery" rule plaintiff's cause of action accrued in 1973 with the location of the surgical needle, her suit was precluded by the amended statute's special one-year limitation as it was brought seventeen months from the needle's discovery. *See Valenzuela v. Mercy Hospital*, 34 Colo. App. 5, 521 P.2d 1289 (1974); *Johnson v. Szymanski*, 368 So.2d 370 (Fla. Dist. Ct. App. 1979); *Patrick v. Morin*, 115 N.H. 513, 345 A.2d 389, 390-91 (1975). *But see Penrod v. Hoskinson*, 170 Mont. 277, 552 P.2d 325, 328 (1976).

We accept the *Stoner* rule as that which accords logically with the language of HRS § 657-7.3 and our position in *Yoshizaki v. Hilo Hospital* with respect to HRS § 657-7, by requiring the statute of limitations in effect to run the moment the plaintiff's cause of action accrues — that is, under HRS §§ 657-7 and 657-7.3, the moment plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter. *Jacoby v. Kaiser Foundation Hospital, supra.*[10] In the instant case,

---

[10] In Jacoby v. Kaiser Foundation Hospital, the Hawaii Intermediate Court of Appeals noted that the *Yoshizaki* rule prevented the statute of limitations from running until the plaintiff discovers or should have discovered "defendant's negli-. gence," while HRS § 657-7.3 required that the statute run from discovery of the "injury." Upon examination of the statute's legislative history, however, the court

appellant learned of the alleged negligent misdiagnosis in 1961, but lacked an actionable claim until 1975 when the injury he claims such misdiagnosis caused surfaced. Appellant similarly lacked an accrued cause of action with respect to the negligently administered radiation therapy until that same year when he discovered both the physical injury and its link to the excessive treatment. Assuming that due diligence on plaintiff's part could not have hastened discovery of these elements, HRS § 657-7.3, in effect at that time, applies to both aspects of appellant's claim. We thus now turn to the question of whether the circuit court was correct in determining that the statute of limitations set forth in HRS § 657-7.3 barred appellant's suit.

### III.

"It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Jacoby v. Kaiser Foundation Hospital, supra* at 527, 622 P.2d at 618, *quoting State v. Zimring,* 52 Haw. 472, 475, 479 P.2d 203, 204 (1970). More specifically, "[s]ummary judgment is to be granted only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Pickering v. State,* 57 Haw. 405, 407, 557 P.2d 125, 127 (1976). In considering whether an issue of material fact exists, "the inferences to be drawn from the under-

---

concluded that the legislature did not intend to draw a significant distinction between the terms, and construed them, for the limited purposes of its case, to require that the statute run when plaintiff discovers or should have discovered the three elements mentioned above. The *Jacoby* construction of HRS §§ 657-7.3 and 657-7 as interpreted in *Yoshizaki* provided the necessary consistency between the two statutes while accommodating the conflicting policies underlying statutes of limitations recognized by this court in *Yoshizaki* — namely, the prevention of stale claims, on one hand, while on the other the ensuring that a party with a valid claim will be given the opportunity to present it. In particular, the court's ruling addressed the predominant concern of the *Yoshizaki* court, that of "[t]he injustice of barring the plaintiff's action before she could reasonably have been aware that she had a claim," by requiring that the plaintiff have knowledge of those facts which are necessary for an actionable claim before the statute begins to run. 50 Haw. at 154.

lying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) . . . must be viewed in the light most favorable to the party opposing the motion." *Technicolor, Inc. v. Traeger,* 57 Haw. 113, 118-19, 551 P.2d 163, 168 (1976), quoting *Gum v. Nakamura,* 57 Haw. 39, 42, 549 P.2d 471, 474 (1976).

Appellant's action for damages based on both the alleged negligent misdiagnosis and unnecessary and excessive radiation treatment, instituted within seven months of his discovery of both the physical injury and alleged wrongs, fell well within the two-year limitation period but beyond the six-year outside limit computed from the date of the injurious act. His claim as to the misdiagnosis, moreover, is not saved by the statutory tolling provision, since appellant had acquired actual knowledge of the alleged negligent act from an independent source in 1961, negating the defendants' duty to inform him of the same from that date.[11] The sole question remaining relative to the effect of HRS § 657-7.3 on appellant's suit was therefore whether the six-year period had been tolled by a failure to reveal information concerning the alleged negligently administered treatment to appellant. This question is ordinarily regarded as one of fact. *Blake v. Wernette,* 57 Cal.App.3d 656, 129 Cal. Rptr. 426, 429 (1976); *see Swope v. Prinz,* 468 S.W.2d 34, 42 (Mo. 1971).

The parties to the motion for summary judgment below, as well as the ruling judge, assumed that the tolling provision's operation depended upon a determination of whether the *hospital* knew or should have known of the alleged tortious acts which it did not

---

[11] The manifest unfairness of this result does not escape this court. It is evident that the very ill addressed by the *Yoshizaki* "discovery" rule is revived in HRS § 657-7.3's outer limit, which extinguishes a right of action six years after the date of the injurious act regardless of whether the right of action has accrued. Were it not for the possibility that defendants had failed to disclose information of the alleged negligent treatment to plaintiff herein, for example, plaintiff's entire action would have been barred before he had an actionable claim. We do not presume to usurp the legislature's function to determine the manner in which such an outer limitation should be imposed, nor do we intend to challenge the legislative policy that, in general, six years "should provide the person allegedly injured sufficient time to discover whether he has suffered any injury at all." House Stand. Comm. Rep. No. 455, *supra.* Nevertheless, the circumstances of this particular plaintiff, whose injury did not become apparent until twenty-seven years had elapsed since his treatment, illustrate that six years will not always be sufficient to prevent a plaintiff from "[t]he injustice of barring the plaintiff's action before [he] could reasonably have been aware that [he] had a claim." Yoshizaki v. Hilo Hospital, *supra* at 154.

disclose to appellant.[12] HRS § 657-7.3, however, touches actions brought against the licensed hospital as the employer of the enumerated health care professionals, "based on such person's alleged, professional negligence . . . or for error or omission in such person's practice . . . ," and protects injured patients from concealment of potential claims by allowing the tolling of the six-year limitation only for that period in which *"the person* had failed to disclose any act, error, or omission upon which the action is based. . . ." HRS § 657-7.3 (1976) (emphasis added). Application of HRS § 657-7.3 to the instant action at all thus requires that appellant have sued Queen's Hospital as the employer of the tortfeasor or tortfeasors.[13] Assuming for the purposes of summary judgment that he had,[14] the pertinent inquiry then becomes (a) whether the employee or em-

---

[12] Although the judge failed to articulate the precise grounds for his granting of summary judgment in favor of Queen's Hospital, it is clear from the transcript of the hearing on the motion that his attention was focused solely on the possibility of the hospital's knowledge of and duty to reveal facts concerning appellant's treatment.

[13] It appears that actions brought against hospitals other than those falling within the ambit of HRS § 657-7.3 are governed by the general personal injury and property damage statute of limitations, HRS § 657-7, as interpreted by this court in Yoshizaki v. Hilo Hospital, *supra.*

[14] This fact is not clear from the pleadings, although it could be surmised from the identification of Dr. Dodge as a defendant and from the wording of the complaint that he had. The complaint refers to the defendants as "agents, servants, employees, assistants, and consultants of their Co-Defendants," and names JOHN DOES XII to XXV as the "doctors, nurses, attendants, employees, assistants, consultants, and the like of Defendants THE QUEEN'S MEDICAL CENTER and JOHN DOES XXVI to XXX, inclusive." In his allegations of wrong-doing, appellant alleges that "each and every Defendant . . . , when acting as a principal was negligent in the selection and hiring of each and every other Defendant . . . ." and names Queen's Hospital together with all of the other defendants as principal tortfeasors in their failure to examine, diagnose and treat appellant with the degree of skill and care ordinarily exercised by those in like professions. Parenthetically, we observe that the answers to interrogatories submitted by appellant and Queen's Hospital refer by name to several physicians who participated in the examination or treatment of appellant, but who are not identified as defendants in the complaint. Whether the doctors or others who allegedly negligently treated appellant are listed as defendants, whether these persons were employees of Queen's Hospital at the time, *see* Silver v. Castle Memorial Hospital, 53 Haw. 475, 489 n.4, 497 P.2d 564, 574 n.4 (Abe, J., concurring); Cooper v. Curry, 92 N.M. 417, 589 P.2d 201, 203-04 (Ct. App. 1978), and whether Queen's Hospital was sued in its capacity as their employer thus constitute factual questions requiring resolution before HRS § 657-7.3 is applied.

ployees who committed the tortious act knew or with reasonable diligence should have known of the alleged error in treatment, and (b) if so, whether such person or persons failed to disclose this information to appellant.

Appellant maintains that Queen's Hospital and his doctors knew or should have known of his over-exposure to radiation, that they did not inform him of this fact, and that he discovered it only at the time his cancer surfaced in 1975. The hospital's response, framed with the objective of denying its own knowledge of and duty to reveal the facts alleged, did not discuss the possibility of knowledge of the alleged negligent treatment on the part of any other defendants. The record, consisting primarily of the pleadings and answers to interrogatories served on appellant and Queen's Hospital by each other, neither affirmatively demonstrates nor negates knowledge of the excessive radiation therapy on the part of those defendants other than Queen's Hospital who were named as responsible for the same. Whether those treating appellant would have known of the alleged negligent therapy had they exercised reasonable diligence is likewise not answered by the record and was not addressed by the lower court. Viewing the record and inferences to be drawn from the facts contained therein in a light most favorable to appellant, we find, therefore, at the very least that a genuine issue of fact material to the determination of whether the statutory period was tolled remains, precluding summary judgment.

We reverse and remand this case for further proceedings not inconsistent with this opinion.

*Charles M. Tonaki (Hong & Iwai* of counsel) and *A. J. Connick Doran* for plaintiff-appellant.

*Dennis E. W. O'Connor (Thomas M. Waddoups* with him on the brief, *Hoddick, Reinwald, O'Connor & Marrack,* of counsel) for defendant-appellee The Queen's Medical Center.

On the answering brief: *Hyman M. Greenstein* and *Wayne D. Parsons (Greenstein & Parsons* of counsel) for defendant-appellee Richard S. Dodge, M.D.