611 F.Supp. 1285 (1985)
In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.
Clara FRATICELLI, et al., Plaintiffs,
v.
The DOW CHEMICAL CO., et al., the United States of America, etc., Defendants.
MDL No. 381. CV-82-1734.
United States District Court, E.D. New York.
May 9, 1985.
*1286 Robert C. Taylor, Jr., Ashcraft & Gerel, Washington, D.C., Michael R. Salling, Fernandes, Salling & Salling, Kapaa, Kauai, Hawaii, for plaintiffs.
Leonard Rivkin, Rivkin, Leff, Sherman & Radler, Garden City, N.Y., Philip Pakula, Townley & Updike; Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft; William Krohley, Kelley, Drye & Warren; Thomas Beck, Arthur, Dry & Kalish; Bruce Hecker, Shea & Gould, New York City, of counsel; David R. Gross, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, New York City; Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill.; Henry G. Miller, Clark, Gagliardi & Miller, White Plains, N.Y.; Tany S. Hong, Atty. Gen.; Michael A. Lilly, Lawrence K. Lau & Gerald C. Yoshi, Deputy Attys. Gen., Honolulu, Hawaii; Arvin Maskin, Robert C. Longstreth, Dept. of Justice, Washington, D.C., for defendants.
WEINSTEIN, Chief Judge.

I. INTRODUCTION
Defendants have moved to dismiss or in the alternative for summary judgment. They are the seven manufacturers of Agent Orange; its purchaser, the United States; and the former Regents of the University of Hawaii which tested the product. Plaintiffs Clara Fraticelli, wife of William Fraticelli (deceased), James K. Oshita, and Masao Takatsuki, sue on behalf of themselves and a class of 35,000 unnamed residents of Kauai County, Hawaii, alleging that they were all harmed by exposure *1287 to Agent Orange. Jurisdiction is premised on 28 U.S.C. §§ 1331, 1332, 42 U.S.C. § 1983, and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80. For the reasons stated below, the motions must be granted.

II. FACTS
Fraticelli, Oshita, and Takatsuki were civilians employed at the University's Kauai Experimental Station for Tropical Agriculture. Fraticelli worked in the fields as an Equipment Operator from 1946 until his retirement in 1972. Oshita was similarly employed from 1961 to 1982 and Takatsuki from 1961 to 1980.
In 1966 and 1967 the University, pursuant to a contract with the United States Department of Defense, conducted tests by spraying on its fields chemicals including arsenic, benzol, beryllium, zirconium, cadmium, chrome, lead, fluorine, 2,3,7,8-tetrachlorodibenzo-p-dioxin ("TCDD" or "Dioxin") and other herbicides.
All three employees claimed exposure during a 1967 incident. They stood by their tractors, which had been marked with flags as targets for aerial herbicide spraying, and were "drenched" by a substance they believe was Agent Orange manufactured by one or more of the defendants. They also believe they were exposed on two other occasions. No protective clothing or showers had been provided.
Fraticelli died in April 1981 as a result of lung and kidney cancer. He had a history of bladder cancer (which did not recur after surgery), a metastatic brain tumor, priapism dating back to 1962, and migraine headaches dating back to 1946. He drank "2 to 3 shots of whiskey per day for many years," had family problems to which he attributed his headaches and tensions, and smoked over one pack of cigarettes per day, which his doctors told him was "excessive." (Hospital Record 7/23/73.)
Oshita was diagnosed as having liver dysfunction in 1969. In 1971 he had a kidney stone and was diagnosed as having cancer of the bladder, which has not recurred since surgery at that time. In 1980 chronic hepatitis was present, and he alleged that he also suffered from diabetes, anemia and chloracne at one time or another. He claims he discontinued "moderate" drinking in 1971 and smoked one pack of cigarettes per day for over 30 years. His hospital records indicate no chloracne but do show that he "smokes at least 1½ packs a day and used to drink quite a lot of alcoholic drinks." (Hospital Record 11/23/71.) His father died of stomach cancer at age 60. His maternal grandfather died of cancer, and his two brothers both have histories of kidney trouble.
Takatsuki was diagnosed as having cancer involving the undersurface of the tongue and floor of his mouth in late 1978. He has a 60-80 pack per year history of smoking and also a moderate alcohol intake, "mostly bourbon." (Medical Center Record 10/10/78.) He was treated with radiation therapy and there has been no recurrence as of February, 1985. This plaintiff also claims to suffer from chloracne although there is no mention of this in his medical records supplied to the court.
In none of the extensive medical records of treating physicians and hospitals supplied by plaintiffs' counsel could the court find any reference to Agent Orange. Nevertheless, plaintiffs' expert, Dr. Samuel P. Epstein, had no doubt that plaintiffs' various complaints were caused by Agent Orange even though he had never seen any of the plaintiffs. See Epstein affidavit, March 9, 1985; see also the full discussion of Dr. Epstein's evidence in In re "Agent Orange" Product Liability Litigation, 611 F.Supp. 1223 (E.D.N.Y.1985). His is the only evidence supporting plaintiffs' case. The facts in the instant case require rejection of Dr. Epstein's proposed testimony. Id.
All three plaintiffs filed workers' compensation claims in which they listed each other as witnesses to the claimed 1967 incident and asserted knowledge of the causal nexus between their illnesses and exposure to chemicals: Fraticelli's claim, filed October *1288 1, 1979, asserts knowledge in September, 1979; Oshita's claim, filed July 12, 1979, asserts knowledge on July 11, 1979; and Takatsuki's claim, filed January 7, 1981, asserts knowledge at an unspecified day in January, 1979. Mrs. Fraticelli filed a workers' compensation death benefit claim on May 28, 1981.
In their workers' compensation claims plaintiffs characterize their injuries as having been caused by a host of toxic substances:
latent slow acting diseases from occupational exposure to arsenic and/or benzol, and/or beryllium, and/or zirconium, and/or cadmium, and/or chrome, and/or lead, and/or fluorine, and/or other toxic chemicals including but not limited to dibenzo-p-dioxin (TCDD or Dioxin) and other toxic herbicides, including but not limited to phenoxy herbicides.
(Emphasis supplied.)
On April 21, 1982 the State of Hawaii Department of Labor issued its decision accepting liability in both Fraticelli claims and awarding his widow compensation in an aggregate amount of slightly more than $73,000. On October 19, 1981, the Department awarded James Oshita slightly more than $23,000 for a period of total disability, for permanent partial disability, and for disfigurement from surgical scars. Plaintiff Takatsuki has indicated only that his workers' compensation claims were pending; based upon their common exposure and the Department of Labor decision as regards Fraticelli and Oshita, it is assumed, without objection from counsel, that Takatsuki has also obtained workers' compensation.
On January 16, 1979 plaintiffs' Hawaiian counsel entered into an agreement with the Agent Orange Plaintiffs' Management Committee to join in the Agent Orange Product Liability Litigation, MDL No. 381. Yet plaintiffs did not file their complaint, Civ. No. 82-0021, in the Hawaii district court until January 11, 1982. The Multidistrict Litigation Panel then transferred the Hawaii action to the Eastern District of New York.
All three plaintiffs submitted administrative claims to the United States on January 7, 1981. There is no information indicating that these claims have been acted upon by the government.

III. LAW

A. Class Action

Plaintiffs in this action fail to meet the prerequisites of a class action in any respect save numerosity. Fed.R.Civ.P. 23. The population-at-large of Kauai County, Hawaii cannot make any claim in common with that based on injuries sustained by these employees during experiments at the University of Hawaii. No harm to the residents of Kauai County from contaminated herbicides has been shown. Plaintiffs have not demonstrated a common interest with the populace relative to their own work experiences at the Experimental Station. Class certification was properly denied.

B. Statute of Limitations

Plaintiffs' claim against the chemical companies and the University's Former Regents is governed by the two-year Hawaii statute of limitations for tort actions, which provides:
Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued * * *.
Haw.Rev.Stat. § 657-7 (1976).
The Supreme Court of Hawaii has held that a claim accrues when the plaintiff discovers, or reasonably should have discovered, the "negligent act, the damage, and the causal connection between the former and the latter." Yamaguchi v. Queen's Medical Center, 65 Haw. 84, 648 P.2d 689, 693-94 (1982).
Plaintiffs Oshita and Takatsuki and plaintiff Fraticelli's husband all knew of the act, the damage and the causal nexus more than two years prior to the filing of this action on January 11, 1982. Oshita filed a workers' compensation claim for the injuries on July 12, 1979; he stated that *1289 he knew "of his disability resulting from his exposure to" phenoxy herbicides and dioxin on July 11, 1979. Takatsuki filed a Workers' Compensation claim for the injuries on January 7, 1981; he stated that he knew "of his disability resulting from exposure to" phenoxy herbicides and dioxin "in January, 1979." When Fraticelli filed a Workers' Compensation claim on October 1, 1979 for his alleged injuries, he stated that he knew "of his disability, resulting from exposure" to phenoxy herbicides and dioxin "in September 1979."
The latest date on which plaintiffs may be said to have "discovered" the causal connection was September 1979, more than two years prior to institution of the Hawaii district court action. These are all civilian claims. The certification of veterans' claims as a class action had no effect in tolling the statute of limitations. There was no tolling of the statute by any concealment.
Wrongful death claims must be filed within two years of the date of death. Haw.Rev.Stat. § 663-3. Fraticelli died on April 27, 1981. The wrongful death action was timely filed on January 11, 1982. As indicated below, this claim must be dismissed for other reasons.
Accordingly, all claims of plaintiffs Oshita and Takatsuki against the chemical companies and the Former Regents of the University of Hawaii and all claims of plaintiff Fraticelli, other than for wrongful death, are barred.
The Federal Tort Claims Act requires, as prerequisite to suit against the United States, a filing of an administrative claim within two years of accrual. 28 U.S.C. § 2401(b) (Supp.1984).
Certified mail receipts show that administrative claim forms were received by the government on January 12, 1981. While the argument of the government that plaintiffs must have known of their claims prior to January 12, 1979 is persuasive, there is no need to decide that factual question now. There is also no point in analyzing the government's contention that plaintiffs have failed to exhaust their administrative remedies. See 28 U.S.C. § 2675(a).

C. Election of Remedies

Plaintiffs' claim against the Former Regents of the University of Hawaii is barred by their receipt of workers' compensation funds. Haw.Rev.Stat. § 386-5. The statute provides:
The rights and remedies herein granted to an employee or his dependents on account of a work injury suffered by him shall exclude all other liability of the employer to the employee, his legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury.
The statutory compensation remedy for workers is exclusive. Evanson v. University of Hawaii, 52 Haw. 595, 483 P.2d 187 (1971). See also Jordan v. Rita, 670 P.2d 457 (S.Ct.Haw.1983).

D. Causation

Plaintiffs have submitted scientific expert testimony in the form of medical affidavits. These affidavits suffer from the same defects as those discussed at length in the decision dismissing claims of veterans who opted out of the class. In re "Agent Orange" Product Liability Litigation, 611 F.Supp. 1223 (E.D.N.Y.1985). The same Epstein affidavits already rejected, id. at 1238, have also been relied upon by plaintiffs in the instant case as their main support for resisting summary judgment.
As with the veteran plaintiffs, there is no admissible evidence that Agent Orange caused plaintiffs' illnesses. Like many veterans, Fraticelli and Oshita smoked and consumed alcohol. All plaintiffs freely admit exposure to many toxic chemicals other than Agent Orange. There is evidence of family histories of cancer and kidney disease. Some of Fraticelli's symptoms actually predated his alleged exposure to dioxin. As with the veterans who opted out, the expert and other evidence that these *1290 plaintiffs rely upon "fail(s) to show how the myriad illnesses at issue are more likely caused by Agent Orange than by something else. Their conclusions are wholly speculative." 611 F.Supp. at 1253.
The motion for summary judgment by all defendants against all plaintiffs must be granted. The action is dismissed without costs or disbursements. This opinion constitutes a final judgment.
SO ORDERED.