**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000438
14-NOV-2022
08:10 AM
Dkt. 69 MO**

NO. CAAP-17-0000438

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


KURT P. MACCARLEY, Plaintiff-Appellant,
v.
COUNTRYWIDE FINANCIAL CORPORATION, INC.; COUNTRYWIDE
HOME LOANS, INC.; BANK OF AMERICA CORPORATION, INC.;
LANDSAFE, INC.; LANDSAFE APPRAISAL SERVICES, INC.;
JOSEPH MICHAEL MAGALDI, III, Defendants-Appellees,
and
DOES 1 through 20, inclusive, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 10-1-339)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Nakasone, JJ.)

Plaintiff-Appellant Kurt P. MacCarley (**MacCarley**) appeals from the "Amended Judgment" filed on April 24, 2017, by the Circuit Court of the Third Circuit (**Circuit Court**),[1] and challenges the "Order Granting Defendants Countrywide Financial Corporation, Inc.; Countrywide Home Loans, Inc.; Bank of America Corporation, Inc.; Landsafe, Inc.; and Landsafe Appraisal Services, Inc.'s Motion to Dismiss Second Amended Complaint" (**Order Granting Motion to Dismiss SAC**) entered on July 13, 2015.

---

[1] The Honorable Greg K. Nakamura presided.

This appeal arises from a civil action in which MacCarley filed claims against Defendants-Appellees Countrywide Financial Corporation, Inc. (**Countrywide Financial**) and Countrywide Home Loans, Inc. (**Countrywide Home Loans)** (collectively **Countrywide**); Bank of America Corporation, Inc. (**Bank of America**); Landsafe, Inc. (**Landsafe**); and Landsafe Appraisal Services, Inc. (**Landsafe Appraisal)** (collectively the **Entity Defendants**).  MacCarley also asserted claims against Defendant Joseph Michael Magaldi, III (**Magaldi**).

MacCarley's Second Amended Complaint (**SAC**) asserts, *inter alia*, that after receiving an advertisement from Countrywide about a "Dream Loan," he contacted Countrywide's call center and was told he would be pre-approved for a "One-Time Close Loan," which was a single loan for the purchase and construction of property with one set of loan costs and charges. The SAC then alleges that Countrywide's call center persuaded MacCarley to speak with Magaldi, who was described as a real estate agent with "Hawaiian Dream Properties" who had "lots of good deals," but MacCarley was not informed that Magaldi was an employee or agent of Countrywide as a mortgage solicitor/loan officer and home loan consultant.  The SAC alleges Magaldi falsely represented to MacCarley that he was being offered the best loans available to him when Countrywide was instead steering MacCarley into a subprime loan calculated to increase revenues to Countrywide; Magaldi persuaded MacCarley to purchase a lot (**Property**) located in Volcano on Hawai‘i Island to build his "dream home," by promising the property was a bargain and that MacCarley would have $500,000 in equity because the 5 acre lot could be sub-divided to sell as five separate homes.  The SAC further alleged that when Countrywide recommended Magaldi to MacCarley as a real estate agent, Magaldi provided a real estate license number that belonged to another person which he used on loan documents and agreements, and although Magaldi was employed by Countrywide as a mortgage solicitor he was not licensed as such.  The SAC further alleges Magaldi assured MacCarley he could easily get county approval to subdivide the property, which

2

induced MacCarley to make the purchase.  The SAC also alleges that appraisals were done by Landsafe that were higher than warranted so that MacCarley could afford the deposit amount.  The SAC alleges that on July 10, 2006, Magaldi traveled to Los Angeles for the loan closing, documents were not provided to MacCarley and he later learned that rather than the one simple loan he had been promised, there were three extremely complicated loans with their own costs, fees, penalties and interest.  The SAC further contends that Countrywide provided MacCarley with another Truth in Lending Disclosure Statement, which he signed with other loan documents on April 22, 2008, which showed his mortgage payments and increases over time.  Finally, the SAC alleges that in November 2009, MacCarley obtained a judgment against Magaldi in a lawsuit filed in Civil No. 07-1-0413 in the Circuit Court, for numerous claims.

The SAC alleges three counts: Breach of Contract (count I), Unfair and Deceptive Trade Practices (**UDAP**) (count II), and Injunction (count III).

On appeal, MacCarley raises three points of error.  He asserts that the Circuit Court erred in granting the Entity Defendants' Motion to Dismiss Second Amended Complaint (**Motion to Dismiss SAC**) by (1) dismissing his UDAP claim for failure to file it within the four-year limitations period under Hawaii Revised Statutes (**HRS**) § 480-24 (2008);[2] and (2) dismissing the breach of contract claim for insufficient factual pleading.  MacCarley also

---

[2]  At the time the underlying action was commenced, HRS § 480-24 provided, in relevant part:

> **§480-24 Limitation of actions.**  (a) Any action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues, except as otherwise provided in subsection (b) and section 480-22.  For the purpose of this section, a cause of action for a continuing violation is deemed to accrue at any time during the period of the violation.

(Emphasis added.)  HRS § 480-24 has since been amended by deleting subsection (b) and the "subsection (b) and" language in subsection (a).  2016 Haw. Sess. Laws Act 7, § 2 at 7.

contends the Circuit Court erred in dismissing fraud claims that had been asserted in the First Amended Complaint.

We conclude MacCarley timely filed his UDAP claim within the four-year limitations period under HRS § 480-24 (2008); MacCarley sufficiently asserted a claim for "breach of good faith and fair dealing" against Countrywide Home Loans and Bank of America, but not the other Entity Defendants; and that MacCarley abandoned his fraud claims by not seeking to reassert them in his Second Amended Complaint.  We thus affirm in part and vacate in part.

### I.  UDAP Claim

In his first point of error, MacCarley contends the Circuit Court erred in dismissing his UDAP claim on the basis that this claim was not filed within the four-year statute of limitations period under HRS § 480-24.  In addition, MacCarley argues that because the UDAP claim was first filed in federal court in June 2009[3] and later voluntarily dismissed, the limitations period for refiling in state court was tolled pursuant to 28 U.S.C.A. § 1367(d) (1990).[4]  We do not address tolling under 28 U.S.C.A. § 1367(d) because the record shows that

_____

[3]  On June 29, 2009, MacCarley filed a complaint in the U.S. District Court, Central District of California, asserting state and federal claims against "Countrywide; Landsafe; Bank of America, Angelo Mozilo; Joseph Michael Magaldi, III[.]"  MacCarley asserts that, after that case was transferred to the U.S. District Court for the District of Hawaii, the case was voluntarily dismissed.

[4]  28 U.S.C.A. § 1367 (1990) provides, in relevant part:

> **§1367  Supplemental jurisdiction.**  (a)... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....
> ....
> (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

MacCarley did not argue it below and has thus waived the argument on appeal.  Stanley v. State, 148 Hawaiʻi 489, 495 n.13, 479 P.3d 107, 113 n.13 (2021) (quoting Kernan v. Tanaka, 75 Haw. 1, 35, 856 P.2d 1207, 1224 (1993) ("[T]he general rule is that an issue which was not raised in the lower court will not be considered on appeal[.]")).

We review the Circuit Court's ruling on the Motion to Dismiss SAC *de novo*.  Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 256-7, 428 P.3d 761, 768-9 (2018), as corrected (Oct. 15, 2018) (citing Hungate v. Law Office of David B. Rosen, 139 Hawaiʻi 394, 401, 391 P.3d 1, 8 (2017)).  We adhere to the notice pleading standard of review by which a Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 12(b)(6) motion is evaluated, and which requires that:

> a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim that would entitle [them] to relief. The appellate court must therefore view a plaintiff's complaint in a light most favorable to [them] in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, in reviewing a circuit court's order dismissing a complaint ... the appellate court's consideration is strictly limited to the allegations of the complaint, and the appellate court must deem those allegations to be true.

Malabe v. Ass'n of Apartment Owners of Exec. Ctr. by & through Bd. of Dirs., 147 Hawaiʻi 330, 356-57, 465 P.3d 777, 803-04 (2020) (alterations and ellipsis in original) (quoting Reyes-Toledo, 143 Hawaiʻi at 257, 428 P.3d at 769).

In the Order Granting the Motion to Dismiss SAC, the Circuit Court ruled that:

> As to Plaintiff's unfair and deceptive trade practices claim, in that the appellate courts of the State of Hawaiʻi have not determined whether the discovery rule applies to the statute of limitations set forth in [HRS] § 480-24, this Court will, in the absence of such a determination, follow the position taken by the United States District Court for the District of Hawaiʻi, which has determined that the

<u>discovery rule does not apply.[5]  Plaintiff has also pled insufficient facts as to fraudulent concealment to toll the statute of limitations.</u>

(Emphasis added.)  In his SAC, MacCarley alleged:

> 3.  Defendant COUNTRYWIDE HOME LOANS, INC. ... is and was a subsidiary of COUNTRYWIDE Financial, and engages in the business of originating mortgage loans.
>
> 4.  Defendant BANK OF AMERICA (hereinafter "BOA") is a Delaware Corporation.  At all times relevant herein Defendant BOA was an assignee, which owned and/or purchased the benefits of Plaintiff's residential mortgage loan from COUNTRYWIDE Home Loans.
>
> 5.  Defendant LANDSAFE, INC. (hereinafter "LANDSAFE") is a Delaware corporation and at all relevant times herein, was a subsidiary of COUNTRYWIDE Financial, and provides loan closing products and services such as credit reports, appraisals, property valuation services and flood determinations.
>
> 6.  Defendant LANDSAFE APPRAISAL SERVICES, INC. (hereinafter "LANDSAFE APPRAISAL") is a California corporation and is registered to do business in the State of Hawaii.  LANDSAFE APPRAISAL offers appraisal services in connection with mortgage loan closings.
>
> 7.  Defendant, JOSEPH MICHAEL MAGALDI III (hereinafter "MAGALDI"), is a resident of the Island of Hawaii, State of Hawaii.
>
> . . . .
>
> 9.  The real property in question (hereinafter "subject property") is a lot located at 19-4034 Old Volcano Road, Volcano, Hawaii.
>
> 10.  The subject mortgage loans were entered into between Plaintiff and Defendant COUNTRYWIDE HOME LOANS, INC., predecessor to Defendant BANK OF AMERICA CORPORATION, INC., in California.
>
> 11.  In November 2005, Plaintiff received an advertisement from Defendants COUNTRYWIDE FINANCIAL CORPORATION, INC. and COUNTRYWIDE HOME LOANS, INC (hereinafter referred to collectively as "COUNTRYWIDE") offering a "Dream Loan" to help him to build his "Dream Home."
>
> 12.  The "dream loan" was in fact Defendant COUNTRYWIDE's One-Time Close Loan ("OTC") program that offered construction, permanent financing, and a Home

---

[5]  Under the discovery rule, the statute of limitations is triggered "when the plaintiff 'discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter.'" <u>Thomas v. Kidani</u>, 126 Hawaiʻi 125, 132, 267 P.3d 1230, 1237 (2011) (quoting <u>Yamaguchi v. Queen's Med. Ctr.</u>, 65 Haw. 84, 90, 648 P.2d 689, 693–94 (1982)).

Equity Line of Credit ("HELOC") in one "fast and easy" loan transaction and provide borrowers like Plaintiff a "low Prime plus 1% interest during construction" and "interest-only option during construction".

13.   ... Defendant COUNTRYWIDE,[6] through their call center operatives, told Plaintiff that he had such good credit scores he would be pre-approved for any [One-Time Close (**OTC**)] loan, and that the OTC loan was a single loan which dealt with the purchase and construction of the property with only one set of loan costs and charges for one loan.

14.   In fact, there was not "one loan transaction" but three, each with its own costs, fees and penalties, and further, Plaintiff was charged neither a "low Prime plus 1% interest during construction" nor an "interest-only option during construction" but a higher interest rate which was not disclosed to him until long after the closing....

15.   Defendant COUNTRYWIDE, through their call center operatives, in November 2005, persuaded Plaintiff to speak to Defendant MAGALDI in Hawaii, who was described by them as a real estate agent with "Hawaiian Dream Properties" and someone who had "lots of good deals".  Plaintiff was not informed that Defendant MAGALDI was an employee or agent of Defendant COUNTRYWIDE as a COUNTRYWIDE Mortgage Solicitor/Loan Officer and Home Loan Consultant.

16.   Defendant COUNTRYWIDE told Plaintiff he qualified for a Prime Loan, since he had credit excellent scores with the three reporting agencies of respectively 741, 783 and 791; however, COUNTRYWIDE encouraged its brokers like MAGALDI, through financial incentives, to move Plaintiff into the subprime category.  The commission on a subprime loan was .50% of the loan's value, while the commission on loans in the next highest category was a mere .20% of the loan's value.

17.   Defendants through their agent, MAGALDI, falsely represented to Plaintiff from November 2005 through April 2006 that they were offering the best loans available to Plaintiff when, in fact, Defendant COUNTRYWIDE and its agents steered Plaintiff, a potential prime borrower, into a subprime OTC loan that was calculated to increase Defendants' income and Defendant COUNTRYWIDE earned additional funds of approximately $40,250.00 through undisclosed fees and penalties that produce significant amounts of revenue to COUNTRYWIDE but that were not disclosed to Plaintiff.

18.   When Plaintiff contacted MAGALDI he was persuaded to purchase the subject property and to

_____

[6]  As set forth in Paragraph 11 of the SAC, "COUNTRYWIDE" is the collective name for Countrywide Home Loans and Countrywide Financial in the SAC.

7

construct his "dream home" thereon by express promises that the property was a "bargain" and that on the day he purchased the property he would already have around $500,000 in equity since the 5 acre lot could be sub-divided to sell as 5 separate homes.  Defendant MAGALDI then purported to act as Plaintiff's real estate agent, as well as his loan broker, and later as his construction supervisor.  However, unknown to Plaintiff, but known to the other named Defendants, Defendant MAGALDI did not have a license for any of these positions.  Defendant COUNTRYWIDE never disclosed this fact to Plaintiff.

19.   ... Defendant MAGALDI used a "false" real estate license number on every loan document and agreement involved in the transaction and Defendant COUNTRYWIDE never disclosed this fact to Plaintiff.

20.   At the time Defendant MAGALDI was employed by Defendant COUNTRYWIDE as a "mortgage solicitor", and so acted in relation to the OTC loan taken out by Plaintiff, Defendant MAGALDI was not licensed as a mortgage solicitor since Defendant MAGALDI received his mortgage solicitor's license on April 4, 2007, almost a full year after the closing.

21.   Within two months prior to the signing of the loan in July 2006, Plaintiff was contacted by Christy Maddage, an underwriter with Defendant COUNTRYWIDE in Plano, Texas, who stated that she discovered that Defendant MAGALDI had appeared on Plaintiff's documents as the real estate agent and had notified her superiors.

22.   Plaintiff later learned that Shawn Kelly, branch manager of Defendant COUNTRYWIDE Honolulu office, had demanded that Defendant MAGALDI surrender his real estate license since it was against the COUNTRYWIDE Lotus Notes Employee Handbook to be a loan officer with COUNTRYWIDE and have a real estate license, but Defendant MAGALDI threatened to quit and Defendant COUNTRYWIDE failed to discipline Defendant MAGALDI.

23.   Defendant COUNTRYWIDE, as Defendant MAGALDI's employer, failed to closely review the professional licenses allegedly claimed to be held by Defendant MAGALDI and closely supervise Defendant MAGALDI's representations to Plaintiff and other customers.

24.   Defendant MAGALDI assured Plaintiff that the process of sub-dividing the 5 acre lots into five separate pieces was a simple administrative process and that Defendants COUNTRYWIDE and MAGALDI could get the matter approved by the county easily.

25.   Based upon the above representations, Plaintiff was induced into agreeing to make the purchase because he was promised he could build his home on one plot of land and then sell the front four plots of land at a profit to finance his retirement.

26.  Because Plaintiff could not afford to make a deposit of twenty percent (20%) of the purchase price, Defendant COUNTRYWIDE and MAGALDI persuaded him that if there was a high enough appraisal value a lower deposit could be acceptable.

27.  Defendants COUNTRYWIDE and MAGALDI then hired Defendant LANDSAFE, a subsidiary of Defendant COUNTRYWIDE, to provide an appraisal for the subject property.

28.  Defendant LANDSAFE is registered with the State of Hawaii Department of Commerce and Consumer Affairs ("DCCA") as a foreign corporation and employs real estate appraisers that must be registered with the Professional and Vocational Licensing Division ("PVL") of DCCA and shall comply with the Hawaii Revised Statutes, the Administrative Rules and the Uniform Standards of Professional Appraisal Practices ("USPAP").

29.  On or about July 6, 2006, the appraisal was done by Maylyn H.M. Stake, SLA #603, and a former high school girlfriend of MAGALDI.  Defendant LANDSAFE provided an appraisal value for the subject property of $1,150,000.

30.  In March 2008, appraiser William Wallace with Defendant LANDSAFE provided a second appraisal which found a "true" value of $700,000.

31.  Plaintiff believes that Defendant LANDSAFE was agreed to and/or induced to make both appraisals higher than was warranted and violated its duty to comply with the Hawaii state law and USPAP, especially Advisory Opinion No. 19.

32. Defendants MAGALDI and COUNTRYWIDE also failed to disclose the community of Volcano's extreme opposition to sub-dividing and building in the forested area and COUNTRYWIDE is in a position to be knowledgeable since its Kona office is nearby. Defendants COUNTRYWIDE and MAGALDI were well aware of or should have known that about such opposition and the extreme difficulty in getting approval to sub-divide and develop the subject property.

33.  On July 10, 2006, MAGALDI traveled to Los Angeles to have the loan closing documents signed and prior to that date, none of the documents or specific terms contained therein had been disclosed to Plaintiff.  Plaintiff signed with Defendant MAGALDI on that date in Los Angeles, California.  Defendants have never provided a signed original of the Promissory Note and despite having promised that Plaintiff would pay no interest for the first three years of the loan have charged an excessive and undisclosed amount in interest charges.  Plaintiff also later learned that he was signing up, not as he had been expressly promised by Defendants COUNTRYWIDE and MAGALDI, for one simple loan, but three extremely complicated loans each with their own costs, fees, penalties and interest charges.

34.    The construction loan portion provided for a floating rate of interest and Plaintiff was unable to lock in a permanent rate of interest before thirty (30) days from the date construction was completed.

35.    Plaintiff went to the Island of Hawaii in late February or March 2007 after signing said loan documents in Los Angeles July 2006.

36.    <u>After completing construction of the home, Defendant COUNTRYWIDE provided Plaintiff with another Truth in Lending Disclosure Statement that Plaintiff signed on **April 22, 2008** as well as other loan documents</u>, showing that his mortgage payments would commence on June 1, 2008 at $4,025.00 with an Annual Percentage Rate of 5.364% and increase to $5,368.39 on June 1, 2018 for 239 months.

37.    On or about November 16, 2009, Plaintiff secured a judgment against Defendant MAGALDI in an action brought in the Circuit Court of the Third Circuit for the State of Hawaii, Civil Case number 07-1-0413, for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty and loyalty, unjust enrichment/detrimental reliance and HRS Chapter 480 Violations, while acting as ... Kurt MacCarley's mortgage broker while employed by Countrywide Financial on the Island of Hawaii, defamation, Negligent and Intentional Infliction of Emotional Distress, Fraud, Negligence/Gross Negligence, Negligent Misrepresentation and Conversion in the principal amount of $359,200.00 together with attorneys' fees and costs awarded in the amount of $22,512.70.  A true and correct copy of said document is attached hereto as Exhibit 'A' and incorporated herein by reference.

(Emphases added.)

Based on the foregoing, the alleged conduct that constitutes the basis for the UDAP claim commenced in November 2005, and is alleged to have continued <u>through April 22, 2008</u>. MacCarley filed his initial complaint on November 16, 2010, approximately two-and-a-half years after April 22, 2008, and filed his First Amended Complaint on March 5, 2011, less than three years after April 22, 2008.[7]  Viewing the allegations in the light most favorable to MacCarley, the events on April 22, 2008, and the amounts MacCarley was then required to pay after

---

[7]  The initial Complaint did not contain allegations about the events on April 22, 2008, but the First Amended Complaint contained the same allegations regarding the April 22, 2008 events as set forth in the Second Amended Complaint.

construction of his home was completed, were part of an alleged continuing violation constituting the UDAP claim and the UDAP claim was asserted within four years of those alleged events. Malabe, 147 Hawaiʻi at 338, 465 P.3d at 785; Reyes-Toledo, 143 Hawaiʻi at 257, 428 P.3d at 769 ("The appellate court must . . . view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory."); HRS § 480-24 ("For the purpose of this section, a cause of action for a continuing violation is deemed to accrue at any time during the period of the violation."); see also Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc., 491 F. Supp. 1199, 1227-29 (D.Haw. 1980).

We thus conclude the Circuit Court erred in dismissing the UDAP claim as untimely under the applicable statute of limitations.

## II.  Breach of Contract Claims

In his second assertion of error, MacCarley contends the Circuit Court erred in dismissing the breach of contract claim as insufficiently pled because claims for "breach of good faith and fair dealing" and "breach of a fiduciary duty" were adequately pled in the SAC.

Paragraph 10 of the SAC alleges that the "subject mortgage loans were entered into between [MacCarley] and [Countrywide Home Loans], predecessor to [Bank of America]."  The SAC further alleges that "[a]t all times relevant herein [Bank of America] was an assignee, which owned and/or purchased the benefits of [MacCarley's] residential mortgage loan from Countrywide Home Loans."  There are no allegations of a contract between MacCarley and any other party.  Therefore, dismissal of the breach of contract claim against all Entity Defendants, except Countrywide Home Loans and Bank of America, was proper.

We thus focus on the claims in count I with respect to Countrywide Home Loans and Bank of America.  In count I, entitled "Breach of Contract," the SAC at paragraph 39 alleges that "[t]he

11

acts of Defendants constitute a <u>breach of contract</u>, <u>breach of good faith and fair dealing</u>, and <u>breach of fiduciary duty</u> and have caused [MacCarley] to suffer financial damages in an amount to be proven at trial."

MacCarley does not dispute that he failed to allege a breach of any contract provision.  <u>See</u> <u>Au v. Au</u>, 63 Haw. 210, 221, 626 P.2d 173, 181 (1981) (concluding that because count for breach of agreement of sale fails to specify what provisions of the agreement were breached, appellees did not have fair notice of what appellant's claim is or the grounds upon which it rests); <u>Kohala Agriculture v. Deloitte & Touche</u>, 86 Hawai'i 301, 307 n.7, 949 P.2d 141, 147 n.7 (App. 1997) (noting that in a breach of contract claim a complaint must cite the contractual provision allegedly violated).  Instead, his arguments on appeal focus on his claims for "breach of good faith and fair dealing" and "breach of fiduciary duty".  Thus, to the extent the Circuit Court dismissed the "breach of contract" claim, MacCarley does not challenge that aspect of the dismissal and we affirm as to dismissal of that claim.

With respect to MacCarley's claim for breach of good faith and fair dealing, dealing in good faith is a principle of contract law.  As determined by the Hawai'i Supreme Court in <u>Best Place, Inc. v. Penn America Insurance Co.</u>, 82 Hawai'i 120, 920 P.2d 334 (1996):

> The obligation to deal in good faith is now a well-established principle of contract law. Restatement (Second) Contracts § 205 (1979) provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  In <u>Hawai'i Leasing v. Klein</u>, 5 Haw.App. 450, 456, 698 P.2d 309, 313 (1985) [sic], the Intermediate Court of Appeals (ICA) explicitly recognized that parties to a contract have a duty of good faith and fair dealing in performing contractual obligations.

<u>Best Place</u>, 82 Hawai'i at 124, 920 P.2d at 338 (alteration in original).  The implied covenant of good faith and fair dealing mandates that "neither party will do anything that will deprive the other of the benefits of the agreement."  <u>Id.</u> at 123-24, 920

P.2d at 337-38 (citations omitted).  "[G]ood faith performance emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Joy A. McElroy, M.D., Inc. v. Maryl Grp., Inc., 107 Hawai'i 423, 436, 114 P.3d 929, 942 (App. 2005) (citation omitted).

Here, the Circuit Court dismissed the breach of contract claim as insufficiently pled as follows:

> Plaintiff's breach of contract claims pled facts indicating that the contract was between Plaintiff and Countrywide Home Loans, Inc. but Plaintiff has alleged insufficient facts to state breach of contract claims for relief against Countrywide Home Loans, Inc. Plaintiff has also pled insufficient facts to state claims for relief against the other Defendants merely because of a business relationship between them and Countrywide Home Loans, Inc.

MacCarley contends he was promised the best loan available, that he could subdivide a five-acre property and sell it as five separate homes, that he would pay low interest, and that he would be getting a single loan with one set of loan costs and charges.  MacCarley contends that none of these promises were kept.  We further note that the SAC alleges that Countrywide persuaded MacCarley to contact Magaldi and that although Magaldi purported to be a real estate agent, he was an employee or agent of Countrywide.

Viewing the allegations in the SAC in the light most favorable to MacCarley, we cannot say that MacCarley can prove no set of facts to support a claim for breach of good faith and fair dealing.  Therefore, we conclude that the Circuit Court erred in dismissing this claim as part of count I against Countrywide Home Loans and Bank of America.

With respect to the breach of fiduciary duty claim, MacCarley contends that a realtor owes a client a fiduciary duty and that Magaldi acted as both his real estate agent and loan broker.  The SAC, however, does not allege any contract between MacCarley and Magaldi, nor does it allege that any defendant owed MacCarley a fiduciary duty.  Further, Entity Defendants point to

case law establishing that commercial lenders have no fiduciary duties to borrowers.  See McCarty v. GCP Mgmt., LLC, No. 10-00133 (JMS) (KSC), 2010 WL 4812763, at *5 (D. Haw., Nov. 17, 2010) ("Lenders generally owe no fiduciary duties to their borrowers."); Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal.Rptr. 53, 54 n.1 (Cal. Ct. App. 1991)("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); Idaho First Nat. Bank v. Bliss Valley Foods, Inc., 824 P.2d 841, 853 (Idaho 1991) ("[A] borrower-lender situation does not create a fiduciary relationship").  Thus, even when viewing the allegations in the SAC in a light most favorable to MacCarley, we conclude that dismissal of the breach of fiduciary duty claim was proper.

Thus, with regard to count I in the SAC, the Circuit Court erred in dismissing the claim for "breach of good faith and fair dealing" against Countrywide Home Loans and Bank of America.  However, the dismissal of the other claims in count I was proper.

### III.  Fraud Claim

In his third assertion of error, MacCarley contends the Circuit Court erred in granting the Entity Defendants' motion to dismiss a fraud claim that was asserted in the First Amended Complaint for failure to plead with sufficient particularity.  MacCarley asserts that if the Circuit Court had not erred in granting in part and denying in part the Entity Defendants' motion to dismiss the First Amended Complaint, he never would have filed the SAC, which excluded the fraud claim.

In our view, MacCarley waived his fraud claim when he did not seek to reassert it in the Second Amended Complaint.  On June 22, 2011, the Circuit Court entered an order dismissing counts I (fraud), II (misrepresentation), and III (UDAP) in the First Amended Complaint, but not counts IV (breach of contract), V (unjust enrichment), and VI (injunction).  Subsequently, on January 5, 2012, the Circuit Court dismissed MacCarley's action and entered an "Order of Dismissal" because no pretrial statement had been filed.

14

After a few years, on July 9, 2014, MacCarley filed a "Motion to Set Aside Order for Dismissal (Rule 12(Q))(Initial Complaint 11-16-2010) Filed January 5, 2012" (**Motion to Set Aside**).  The Motion to Set Aside requested that the Circuit Court reinstate the case, "subject to the filing of a pretrial statement and a motion to amend the complaint for a second time" and attached "Plaintiff's Pretrial Statement" (**Pretrial Statement**).  The Pretrial Statement asserted only three claims for relief: 1) "Breach of Contract"; 2) "Unjust Enrichment"; and 3) "Injunction".  MacCarley's Pretrial Statement did <u>not</u> seek to assert a claim for fraud.  The Circuit Court granted the Motion to Set Aside by order dated October 13, 2014.  On October 27, 2014, MacCarley filed a "Motion for Leave to File Second Amended Complaint," in which he sought to plead <u>only</u> breach of contract and UDAP claims, and a request for an injunction.[8]

Given this record, we reject MacCarley's third point of error.  MacCarley could have reasserted a fraud claim in the Second Amended Complaint, but he failed to do so.  "[A]n amended petition supercedes the original petition and renders the original petition of no legal effect." <u>Beneficial Hawaii, Inc. v. Casey</u>, 98 Hawaiʻi 159, 167, 45 P.3d 359, 367 (2002) (citing <u>Wight v. Lum</u>, 41 Haw. 504, 506-07 (1956)); <u>see also</u> <u>Young v. Univ. of Hawaiʻi</u>, No. 20-CV-00231-DKW-RT, 2020 WL 4612380, at *5 (D. Haw. Aug. 11, 2020) (citing <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 928 (9th. Cir. 2012) (en banc) (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if not re-pled)).

### IV.  Conclusion

Based on the foregoing, the "Amended Judgment" entered on April 24, 2017, by the Circuit Court of the Third Circuit, is vacated to the extent that it dismissed: the UDAP claim on statute of limitations grounds; and the claim against Countrywide

---

[8]  The Second Amended Complaint was filed on November 25, 2014.

Home Loans and Bank of America for "breach of good faith and fair dealing."  The Amended Judgment is otherwise affirmed.

This case is remanded to the Circuit Court for further proceedings consistent with this Memorandum Opinion.

DATED:  Honolulu, Hawaiʻi, November 14, 2022.


On the briefs:                    /s/ Lisa M. Ginoza
                                  Chief Judge
Keith M. Kiuchi,
for Plaintiff-Appellant           /s/ Katherine G. Leonard
                                  Associate Judge
Patricia J. McHenry,
Nicholas M. McLean,               /s/ Karen T. Nakasone
Defendants-Appellees              Associate Judge