**Deborah AGLES, Plaintiff,**

v.

**MERCK & CO., INC.; Merck Human Health Division, formerly known as Merck, Sharp & Dohme; John Does 1–150; Jane Does 1–150; Doe Partnerships 1–150; and Doe Governmental Entities 1–150, Defendants.**

**Civ. No. 93–00701 BMK.**

United States District Court, D. Hawai'i.

Feb. 1, 1995.

Paul Schmeding, Christopher Ferrara, Robinson Ferrara & Chur, Honolulu, HI, Dickran Semerdijian, San Diego, CA, for plaintiff.

James Duffy Jr., Ward Fujimoto, Fujiyama Duffy Fujiyama, Honolulu, HI, Charles Preuss, Preuss Walker & Shanagher, San Francisco, CA, for defendants.

## AMENDED ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KURREN, United States Magistrate Judge.

Defendant MERCK & CO., INC., including its division, MERCK HUMAN HEALTH DIVISION, formerly known as Merck, Sharp & Dohme (hereinafter collectively referred to as "MERCK") moves this court for summary judgment contending that Plaintiff's claims are barred by the statute of limitation.

For reasons discussed below, Defendant MERCK's Motion for Summary Judgment is DENIED.

### FACTS

Plaintiff Deborah Agles, a medical doctor, filed a products liability action against MERCK on March 25, 1993. She seeks to recover damages for personal injuries she allegedly suffered as a result of a series of injections of Heptavax–B, a Hepatitis–B vaccine manufactured by MERCK. In April of 1987, Agles was a flight surgeon with the U.S. Navy and was ordered to receive a series of Heptavax–B. Agles received the injections on April 9, May 19, and June 23, 1987.

On July 11, 1987, Agles lost partial vision in both eyes. She sought treatment and was told she had a migraine headache. Throughout the next year, her visual symptoms deteriorated. Blood tests revealed that the earlier doses failed to immunize her, so on May 5, 1988, she received another injection of Heptavax–B. During the summer of 1988, Agles experienced lower extremity numbness and bladder symptoms.

On November 7, 1988, Agles was told that she might have viral optic neuritis and a further work-up, including an MRI, was suggested. She completed an MRI on November 20, 1988. In January of 1989, the MRI films were read by Dr. Ramsey, who indicated that the MRI revealed a probable viral infection, but definitely were not suggestive of multiple sclerosis. The MRI films were also read by Dr. Norman in April or May of 1989. He determined that Agles did not have multiple sclerosis, but suggested another neurological workup.

On February 14, 1989 Agles filed a Drug Experience Report ("DER") with MERCK. The DER states that: (1) in July of 1987, she developed hemianopsia which progressed to right optic neuritis, and (2) the November 1988 MRI showed multiple areas of demyelination.

Agles underwent another neurological workup in July of 1990 which revealed possible connective tissue disease, a positive ANA, and positive anti-cardiolicin antibodies. In September of 1990, Agles was diagnosed with multiple sclerosis and possible connective tissue disease. Her condition deteriorated further between January and October of 1991. On September 1, 1991, she was discharged from the Navy because of the multiple sclerosis.

On November 9, 1991, Agles read an article in *The Lancet* which related the cases of two patients who had neurological symptoms with evidence of central nervous system demyelinization shortly after administration of the Hepatitis–B vaccine. In September of 1992, she read a letter to the editor in *Infectious Disease News*. The letter told of five people who developed chronic demyelinating

diseases similar to MS after getting Hepta-vax–B vaccinations.

On January 21, 1994, Agles was examined by Dr. Poser who determined that she had chronic relapsing encephalomyelitis with demyelinating features secondary to the Hepta-vax–B vaccine. On March 15, 1994, Agles consulted with Dr. Wallace who diagnosed her condition as lupoid sclerosis. Dr. Wallace stated that he believes her autoimmune disease, multiple sclerosis, and lupoid sclerosis were induced by Heptavax–B.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

If the party moving for summary judgment meets its initial burden at identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the non-moving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.

*T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted). Rule 56(e) requires the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, *"specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e) (emphasis added). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *T.W. Electrical Serv.,* 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Legal memoranda and oral argu-

ment are not evidence and, therefore, fail to create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (footnotes omitted). Indeed, "if the factual context makes the non-moving party's claim *implausible,* the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inference to be drawn therefrom must be construed in the light most favorable to the non-moving party. *T.W. Electrical Serv.,* 809 F.2d at 630–31. Nevertheless, the standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict: Whether "reasonable minds could differ as to the import of the evidence." *Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

## DISCUSSION

In diversity cases, the federal court must apply state law to questions of substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 79–80, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938), *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 434

(9th Cir.1978). Under Hawaii law, the applicable statute of limitation period is determined by the "nature of the claim or right based on the allegations contained in the pleadings." *Crawford v. Crawford,* 69 Haw. 410, 415, 745 P.2d 285, 288 (1987).

Both parties agree that the applicable statute of limitation period is set forth in Hawaii Revised Statutes ("HRS") § 657–7 which provides, in part, that "[a]ctions for the recovery of compensation for damage or injury to persons or property ... be instituted within two years after the cause of action accrued...." HRS § 657–7.

To prevail on this motion for summary judgment, MERCK must prove that there is no genuine issue of fact regarding the date Agles' cause of action accrued and that her complaint was filed more than two years after that date. Agles filed her complaint on March 25, 1993, so MERCK must show, without genuine dispute, that Agles' cause of action accrued prior to March 26, 1991.

## I. *Accrual of Agles' Cause of Action*

■ The Hawaii Supreme Court has defined accrual as the moment a plaintiff discovers or reasonably should have discovered the negligent act, the damage, and the causal connection between the two. *Yamaguchi v. Queen's Medical Center,* 65 Haw. 84, 90, 648 P.2d 689, 693–94 (1982); *see also Pele Defense Fund v. Paty,* 73 Haw. 578, 598, 837 P.2d 1247, 1260 (1992); *Carvalho v. Johns–Manville Sales Corp.,* 871 F.2d 891, 894 (9th Cir.1989) (interpretation of Hawaii's statute of limitation set out in *Yamaguchi* applies to HRS § 657–7).

■ A slightly different test applies to strict products liability cases. A cause of action accrues as soon as a plaintiff knows or reasonably should know that: (1) a defendant is engaged in the business of manufacturing or selling a product, (2) the product contains a defect dangerous to the user or consumer, and (3) the defect is the cause of a plaintiff's injury. *Johnson v. Raybestos–Manhattan,* 69 Haw. 287, 740 P.2d 548, 549 (1987). A product is dangerously defective if "it does not meet the reasonable expectations of the ordinary consumer or user as to its safety." *Id.*

MERCK argues that Agles' cause of action accrued no later than February of 1989. At that time, she completed the DER which establishes the dates of her injections, the resulting injuries, namely optic neuritis and demyelination, and her belief that these injuries were caused by the injections of Heptavax–B.

Agles argues that her cause of action accrued no earlier than November of 1991. At that time, she read an article in *The Lancet* which alerted her to a causal connection between Heptavax–B injections and multiple sclerosis. Agles argues that the injury for which she brought this action against MERCK is multiple sclerosis and not optic neuritis or demyelination.

The characterization of Agles' injury is critical for a proper application of the accrual elements. Courts in asbestos cases have held that a plaintiff's cause of action for a later manifested, separate and distinct lung cancer disease did not accrue upon discovery of the earlier discovered asbestosis, even though both diseases were attributable to the same asbestos exposure. *See e.g. Wilson v. Johns–Manville Sales Corp.,* 684 F.2d 111, 112 (D.C.Cir.1982); *Fearson v. Johns–Manville Sales Corp.,* 525 F.Supp. 671 (D.D.C. 1981) (survival action commenced in May of 1980 is not time barred as to lung cancer where decedent was informed he had mild asbestosis in early 1973, was diagnosed as having lung cancer in March of 1979, and died in May of 1979); *Pierce v. Johns–Manville Sales Corp.,* 296 Md. 656, 464 A.2d 1020, 1025–28 (1983) (holding that Plaintiff's cause of action for cancer did not accrue until he learned of the cancer, and that the statute of limitation, which is similar to Hawaii's statute of limitation, did not bar Plaintiff's claim for lung cancer).

In these asbestos cases, the defendants argued that their actions produced one indivisible cause of action which accrued upon discovery of the earlier disease. The courts rejected this argument because as one court summarized:

to follow Defendant[s'] theory would place the plaintiff on the horns of an insoluble

dilemma. It would require a plaintiff ... to make a choice between bringing his cause of action when the earlier disease was discovered and run the risk of being unable to prove to a reasonable medical certainty that [the later developed disease] would follow or to wait until the [later developed disease] was discovered, but in so doing run the risk of the entire claim being barred by the statute of limitation. The courts reasoned that this was patently unfair and did not serve the underlying purpose of a statute of limitation.

*Joyce v. A.C. & S., Inc.*, 591 F.Supp. 449, 451 (W.D.Va.1984).

The Hawaii Supreme Court has not addressed this issue. Therefore, this court must predict how the Hawaii Supreme Court would decide. In making such a prediction, this court may look to well-reasoned decisions by courts in other jurisdictions. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *reh'g denied, op. modified*, 810 F.2d 1517 (9th Cir.1987). This court agrees and believes that the Hawaii Supreme Court would also agree with the reasoning summarized above. Consequently, if Agles' multiple sclerosis is a separate and distinct disease from optic neuritis or her early demyelination, then her cause of action did not accrue until she discovered, or should have discovered that she had multiple sclerosis and that the injections of Heptavax–B, negligently manufactured by MERCK or containing a dangerous defect, caused the multiple sclerosis.

On the other hand, if Agles' multiple sclerosis is not a separate and distinct disease, but is merely a complication or later realized consequence of optic neuritis or the demyelination, her cause of action accrued when she discovered that she had optic neuritis and demyelination and that the injections of Heptavax–B, negligently manufactured by MERCK or containing a dangerous defect, caused these injuries. *See Nelson v. American Red Cross, et al.*, 26 F.3d 193, 197–98 (D.C.Cir.1994) (finding that cause of action accrued, even if patient did not yet know of full extent of injury, when patient received contaminated blood and discovered injury by being told he had tested positive for HIV, rather than at later date when he developed the complication of AIDS); *Moll v. Abbott Laboratories*, 444 Mich. 1, 506 N.W.2d 816, 825, 26 (1993) (holding that plaintiff's cause of action accrued upon discovery of her DES-related abnormality and not upon discovery of the later-realized consequence of infertility); *Grigsby v. Sterling Drug, Inc.*, 428 F.Supp. 242 (D.D.C.1975), *aff'd*, 543 F.2d 417 (D.C.Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977) (granting summary judgment to defendant drug manufacturer because plaintiff's cause of action accrued when plaintiff knew she had suffered a substantial hearing loss, even though the full extent of her injuries may not have been known).

MERCK cites cases in addition to those above to support its argument that a cause of action accrues once *some* damage is known, even though the extent of that damage is unknown.[1] In these cases, however, the plaintiff had one injury or disease. MERCK's argument is premised on its assumption that Agles received one injury. Agles introduced evidence to show that her earlier injuries were separate and distinct from multiple sclerosis. Specifically, Dr. Ramsey indicated that Agles' optic neuritis and demyelination definitely were not suggestive of multiple sclerosis and Dr. Norman concurred by stating that Agles did not have multiple sclerosis. MERCK supports its argument that the multiple sclerosis is merely a complication or later realized consequence of the earlier injuries with Dr. Wallace's statement that an MRI showed a defect suggestive of a multiple sclerosis. After viewing all evidence in a light most favorable to Agles, this court finds that MERCK failed to establish the absence of a genuine dispute as to whether Agles' multiple sclerosis is a separate and distinct disease from optic neuritis or the early demyelination. Accordingly, MERCK's Motion for Summary Judgment must be DENIED.

1. *Dalton v. Dow Chemical Co.*, 280 Minn. 147, 158 N.W.2d 580 (1968); *Withers v. Sterling Drug, Inc.*, 319 F.Supp. 878 (S.D.Ind.1970).

MERCK did establish that Agles knew she suffered from optic neuritis and some demyelination, that it was caused by the injections of Heptavax–B, and that the vaccine was manufactured by MERCK on or before February, 1989, when she completed the DER. Because a statute of limitation challenge is an affirmative defense, at trial, MERCK will bear the burden of proving that Agles' multiple sclerosis is not a separate and distinct disease, but is merely a complication of or part of the same disease process as optic neuritis or the early demyelination. If MERCK is successful, then Agles' action will be barred for failure to file within the two year statute of limitation.

If it is determined that the multiple sclerosis is a separate and distinct disease, then to prevail on its statute of limitation defense, MERCK must prove that Agles knew of or reasonably should have discovered the multiple sclerosis prior to March 26, 1991. In addition, if it is determined that Agles' multiple sclerosis is a separate and distinct injury, MERCK must prove that Agles knew or reasonably should have known that the Heptavax–B injections may have caused her multiple sclerosis prior to March 26, 1991.

## II. *Splitting a Cause of Action*

MERCK argues that the rule against splitting a cause of action bars Agles from bringing this action. The argument is that Agles had a cause of action for injuries caused by MERCK's manufacture of Heptavax–B no later than February 1989. Because she chose to sit on her right to bring suit until the statute of limitation passed, she cannot bring this suit which is also based upon a claim for injuries caused by MERCK's manufacture of Heptavax–B.

The Hawaii Supreme Court reaffirmed the rule against splitting a cause of action in *Bolte v. Aits, Inc.*, 60 Haw. 58, 60, 587 P.2d 810, 812 (1978) (stating that "[t]he rule against splitting a cause of action is an aspect of [r]es judicata and precludes the splitting of a single cause of action or an entire claim either as to the theory of recovery or the specific relief demanded"). The rationale behind the rule is to "prevent a multiplicity of suits ... [and] to avoid harassment of the defendant, vexatious litigation, and the costs incident to successive suits on the same cause of action." *Id.*

In *Bolte*, the court addressed whether two breaches of a single contract constituted a single cause of action. *Id.* at 62, 587 P.2d at 813. The court denied summary judgment because there was no evidence of when the second breach occurred. *Id.* at 64, 587 P.2d at 814. The court went on to hold that even if the second breach occurred before the plaintiff filed the first suit, the rule against splitting a cause of action would *not apply if the plaintiff was unaware of the second breach through no negligence of his own.* *Id.*, 587 P.2d at 815 (emphasis added).

In reaching its decision, the court carefully examined the rationale behind the rule against splitting a cause of action and determined that it would not be served by applying the rule. *Id.* at 62–63, 587 P.2d at 814. Specifically, the court stated that "[t]he rule presupposes the fact that the plaintiff is consciously acting inequitably in suing for only part of his claim, knowing that he was unnecessarily bringing vexatious lawsuits against the defendant or careless as to whether he was causing such vexation. The rule against splitting should not be so rigidly applied, however, to produce an injustice and thwart the policy upon which it was founded." *Id.*

In *Wilson v. Johns–Manville, supra,* the United States Court of Appeals for the District of Columbia Circuit determined that a second, separate and distinct disease formed the basis of a second cause of action which was not barred by the rule against splitting a cause of action. 684 F.2d at 116–17. The court stated:

> Johns–Manville focus[ed] on the alleged wrongful conduct and assert[ed] that once some harm is apparent, a claim accrues ... for all harm that may eventuate in the future as a result of the same conduct.... In essence, Johns–Manville argue[d], Wilson did not have the option to waive tort recovery for asbestosis, and sue for a lethal cancer if and when such a condition developed. We disagree.

*Id.* at 117.

The Hawaii Supreme Court has not examined the applicability of the rule against

**708**

splitting a cause of action in a tort case where a separate and distinct injury is manifested after the limitation period has run on another injury and where both injuries arose from the same wrongful act by the defendant. MERCK urges this court to find that Agles' action is barred by the rule against splitting a cause of action, regardless of whether her multiple sclerosis is a separate and distinct injury. In light of the Hawaii Supreme Court's reasoning in *Bolte* and this court's concurrence with the reasoning in *Wilson,* such a decision would be improper. This court believes that the Hawaii Supreme Court would examine the underlying purpose of the rule against splitting a cause of action, as it did in *Bolte,* and would probably find, as the *Wilson* court did, that the rule would not bar a second cause of action based upon a separate and distinct disease. Consequently, if it is determined at trial, that Agles' multiple sclerosis is a separate and distinct injury, then her action may not be barred by the rule against splitting a cause of action.

## CONCLUSION

Based on the foregoing, this court finds that MERCK failed to establish the absence of a genuine factual dispute as to whether Agles' cause of action accrued prior to March 26, 1991. Accordingly, Defendant MERCK's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.