**Romey STRAND, Plaintiff,**

v.

**GENERAL ELECTRIC CO., Defendant.**

**Civil No. 94–00196 BMK.**

United States District Court,
D. Hawai'i.

Sept. 13, 1996.

Joy A. Hutson, Hilo, HI, for plaintiff.

John S. Nishimoto, Patricia T. Fujii, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, and Deborah K. Miller, Landels Ripley & Diamond, San Francisco, CA, for defendant.

*ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO FILE OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND FOR LEAVE TO FILE SECOND CONCISE STATEMENT OF FACTS WITH EXHIBITS; AND DENYING DEFENDANT'S MOTION TO STRIKE DECLARATIONS OF JOY A. HUTSON*

KURREN, United States Magistrate Judge.

On March 27, 1996, Defendant General Electric Company ("GE") filed its Motion for Summary Judgment ("Defendant's Motion") and Separate Concise Statement of Facts ("Defendant's Concise Statement") in support thereof. Defendant GE bases its Motion for Summary Judgment upon the expiration of the controlling statutes of limitations. On April 29, 1996, GE filed its First Supplemental Separate Statement of Facts in Support of its Motion for Summary Judgment. Plaintiff filed her Memorandum in Opposition to Defendant's Motion for Summary Judgment and Concise Statement of Facts in Opposition to Defendant's Motion for Summary Judgment (including Declaration of Joy A. Hutson dated June 20, 1996) ("Plaintiff's Concise Statement") on June 24, 1996. Defendant GE filed its Reply Memorandum and Reply Separate Concise Statement of Facts ("Defendant's Reply Concise Statement") on July 1, 1996. On July 8, 1996, Plaintiff filed her Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment (including Declaration of Hutson dated July 6, 1996) on July 8, 1996. On July 10, 1996, Defendant GE filed its Motion to Strike Declarations of Joy A. Hutson, pertaining to Declarations dated June 20, 1996 and July 6, 1996 (filed June 24 and July 8, 1996, respectively). Also on July 10, 1996, GE filed its Objection to Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment.

Defendant's Motion for Summary Judgment came on for hearing before this court on July 10, 1996. On July 16, 1996, Plaintiff lodged her Ex Parte Motion for Leave to

File Memorandum in Opposition to Defendant's Motion for Summary Judgment and for Leave to File Second Concise Statement of Facts With Attached Exhibits ("Plaintiff's Ex Parte Motion").[1] On July 19, 1996, Defendant filed their Opposition to Plaintiff's Ex Parte Motion.

After careful consideration of the motions, the memoranda and concise statements of fact in support and opposition thereto, and the argument of counsel, the court GRANTS Defendant's Motion for Summary Judgment[2], DENIES Plaintiff's Ex Parte Motion for Leave to File Opposition to Defendant's Motion for Summary Judgment and for Leave to File Second Concise Statement of Facts with Exhibits, and DENIES Defendant's Motion to Strike Declarations of Hutson.

## BACKGROUND

In July, 1976, Plaintiff received "Natural Y" Surgitek breast implants. (Def.'s Concise Statement ¶ 3.) On January 20, 1989, Plaintiff had her implants removed because of evidence of rupture; both implants, in fact, were found to have ruptured. (Id. at ¶¶ 4–5.) On December 20, 1989, Plaintiff brought suit against Surgitek, Inc. and Mentor Corp., which suit included allegations that the "[s]ilicone gel [used in the implants] was defective in that it serves as an antigen in some women, causing a condition known as human adjuvant disorder to occur in those women who have had exposure to free silicone gel in their bodies following gel bleed or rupture of the implant." (Id. ¶ 6–7, Ex. 5 at 20 (Pl's Resp. to Def. Surgitek, Inc.'s Req. for Interrogs. dated May 21, 1990)). Plaintiff settled her lawsuit (or exchanged consideration in settlement) against Surgitek, Inc. and Mentor Corp. in October, 1991. (Id. ¶ 8, Pl.'s Concise Statement ¶ 3.)

Plaintiff filed this instant lawsuit against GE on March 11, 1994. Plaintiff sues Defendant for compensatory and punitive damages under theories of strict liability, negligence (including negligence per se for violations of the Food, Drug and Cosmetics Act), failure to warn, breach of express and implied warranties, breach of warranty for a particular purpose, misrepresentation, fraud, and fraud by concealment. (Complaint ¶ 8.)

This case was transferred to the multidistrict litigation panel by Order of April 29, 1994, and remanded to this court on January 5, 1996.

## DISCUSSION

### I. PLAINTIFF'S EX PARTE MOTION

At the hearing and in its Objection filed July 10, 1996, Defendant objected to Plaintiff filing her Supplemental Memorandum in Opposition to Defendant's Motion (filed July 8, 1996) on the grounds that it was untimely and that it "fail[ed] to remedy the deficiencies of her earlier opposition."

The court has reviewed Plaintiff's Ex Parte Motion concerning her request for leave to file Plaintiff's Memorandum in Opposition to Defendant's Motion and understands Plaintiff to be seeking leave, after the fact, to file the Memorandum and Concise Statement which were in fact filed with this court on June 24, 1996. In her Ex Parte Motion, by Declaration of her counsel, Plaintiff provides a description of mail service between Hilo and Honolulu as justification for a delay in filing of the materials filed June 24, 1996. The court finds that to the extent Plaintiff seeks leave to file the materials filed June 24, 1996, leave from this court is not necessary as the briefing and statement is already on file, and Plaintiff's request is DENIED.

■ With respect to Plaintiff's Ex Parte Motion for Leave to File Second Concise Statement of Facts with Attached Exhibits,

---

1. Plaintiff's Ex Parte Motions were subsequently filed.

2. By Remand Order filed January 5, 1996, this case was remanded from multidistrict litigation before the United States District Court for the Northern District of Alabama. By Order of Reference In the Matter of Silicone Gel Breast Implant Product Liability Litigation, filed December 1, 1996, all even-numbered silicone gel breast implant product liability cases remanded from multidistrict litigation were assigned to this court for all further proceedings. In the absence of a demand to have the case reassigned to a district judge, as provided in the Order of Reference, this case is before this court for trial by consent pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

Plaintiff's request is DENIED as untimely. Defendant's filed their Motion on March 27, 1996. Plaintiff had more than three months prior to the hearing of Defendant's Motion in which to assemble the necessary affidavits to oppose Defendant's Motion or to request continuance on the matter pursuant to Fed. R.Evid. 56(f), yet Plaintiff requested leave of the court by ex parte motion only after the hearing of Defendant's Motion. Indeed, Plaintiff received at least one continuance of the hearing, filed a second memorandum in opposition without leave of the court, and presented pure argument at the hearing and was still unable to present the court with medical testimony or other evidence on issues crucial to disposition of Defendant's Motion for Summary Judgment. Plaintiff's request is DENIED for its lateness.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. *STANDARD FOR SUMMARY JUDGMENT*

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the non-moving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.

*T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted). Rule 56(e) requires the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56,

*"specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e) (emphasis added). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *T.W. Electrical Serv.,* 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Legal memoranda and oral argument are not evidence and, therefore, fail to create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnotes omitted). Indeed, "if the factual context makes the non-moving party's claim implausible, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inference to be drawn therefrom must be construed in the light most favorable to the non-moving party. *T.W. Electrical Serv.,* 809 F.2d at 630–31. Nevertheless, the standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict: Whether "reasonable minds could differ as to the import of the evidence." *Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

### B. *STATUTE OF LIMITATIONS DEFENSE*

■ Defendant argues that all of Plaintiff's claims, except for her breach of warranty claims, are barred by lapse of the two year statute of limitations period for personal injury claims provided by Haw.Rev.Stat. § 657–7. In addition, Defendant contends that Plaintiff's breach of warranty claims are barred by the relevant four year statute of limitations period for breach of warranty claims under Haw.Rev.Stat. § 490:2–725. Under Hawaii law, the Defendant has the burden of proof on its affirmative defenses based upon limitations statutes. *Carvalho v. Raybestos–Manhattan, Inc.,* 794 F.2d 454, 456 (9th Cir.1986).

According to Defendant, Plaintiff's cause of action for breach of warranty accrued on the date the implants were "delivered" or when they were implanted in Plaintiff, which was 1976, eighteen years before she filed suit against GE. Defendant contends that even if Plaintiff's breach of warranty claims escaped application of the statutory accrual on delivery, Plaintiff knew of a potential breach of warranty claim in December 1989 when her ruptured implants were removed, so that any breach of warranty claim would be barred four years thereafter, or December 1993.

In the initial Memorandum in Support of its Motion for Summary Judgment, GE argued that Plaintiff's claims (other than the breach of warranty claims) accrued no later than 1989, the year in which Plaintiff had her breast implants removed, discovered they were ruptured, and filed suit against Surgitek and Mentor. At oral argument, Defendant argued that even if Plaintiff's claims (other than the breach of warranty claims) were deemed to have accrued as late as October, 1991 (the time she discovered the identity of GE), the two year statute of limitations on personal injury claims is a bar to this lawsuit.

■ Defendant argues that to determine the date Plaintiff's non-warranty causes of action accrued, the court must apply the "discovery" rule. The discovery rule applied to a negligence claim provides that a cause of action does not accrue until the party discovers or should have discovered the negligent act, the damage, and the causal connection between them. *Carvalho v. Raybestos–Manhattan, Inc.,* 794 F.2d 454, 456 (9th Cir.1986); *Agles v. Merck & Co.,* 875 F.Supp. 701, 705 (D.Haw.1995) (citing *Yamaguchi v. Queen's Medical Center,* 65 Haw. 84, 90, 648 P.2d 689, 693–94 (1982). A cause of action for strict liability accrues as soon as plaintiff knows: (1) a defendant is engaged in the business of manufacturing or selling a product, (2) the product contains a defect dangerous to the user or consumer, and (3) the defect is the cause of injury to plaintiff. *Agles,* 875 F.Supp. at 705. Defendant argues that Plaintiff's ignorance of the identity of the wrongdoer is irrelevant to the running of the statute of limitations.

In her opposition to Defendant's Motion for Summary Judgment, Plaintiff states "there is no dispute that the applicable statute of limitations period is set forth in [H.R.S.] § 657–7" but Plaintiff contends that her causes of action accrued sometime later than Defendant asserts. (Pl.'s Mem. in Opp'n at 4.) Plaintiff does not argue that the longer, four year statute of limitations applies to her breach of warranty claims.

Plaintiff contends that her causes of action did not accrue until after she discovered the identity of GE as the manufacturer of component parts of her breast implants, that her causes of action for injury resulting in Sjogren's Syndrome [3]/Mixed Connective Tissue Disorder did not accrue until after she was diagnosed with that separate and distinct disease, and furthermore, that the statute of limitations was tolled by the filing of *Dante v. Dow Corning,* a national class action, on Jan-

---

**3.** Sjogren's Syndrome is defined as:
  A condition marked by keratoconjunctivitis (inflammation of the cornea and conjunctiva), dryness of the mucous membranes, purpuric spots on the face (pigmented spots caused by

hemorrhage), enlargement of the parotid salivary glands, polyarthritis (arthritis of many joints), and xerostomia (dryness of the mouth).
4 Schmidt's Attorneys' Dictionary of Medicine S–173 (1996).

uary 24, 1992, which put Defendant on notice of Plaintiff's potential claims against it. (*Id.* at 5–7.)

### i. *Limitations Period Not Tolled While Identity of Defendant Is Unknown*

In her initial memorandum in opposition, Plaintiff cited no precedent in support of her contention that the statute of limitations does not run until she identified GE as a manufacturer of component parts of her breast implants. Plaintiff concedes that she did discover the identity of GE on October 25, 1991. (Pl.'s Mem. in Opp'n at 5.) The court agrees with Defendant that Plaintiff's knowledge of the identity of the alleged wrongdoer is not relevant to the accrual of her causes of action based on products liability, whether based on strict liability or negligence; instead, the relevant "discoveries" are the injury and the immediate *physical* cause of the injury (in this case, the alleged "cause" of Plaintiff's injuries is the silicone gel released into her body). *Dyniewicz v. United States,* 742 F.2d 484, 486 (9th Cir.1984); *accord, Bristol–Myers Squibb Co. v. Superior Court,* 32 Cal.App.4th 959, 965, 38 Cal. Rptr.2d 298, 303 (Cal.Ct.App.1995) (ignorance of identity of alleged wrongdoer did not affect accrual of claim upon plaintiff's knowledge of injury and of facts creating, or which should have created, a suspicion of negligence by another). Furthermore, Plaintiff's argument is counter to an important purpose of statutes of limitations: the limiting period provides plaintiffs with a period in which to investigate a perceived injury and investigate potential claims. A plaintiff must take action on such claims, including investigating the identity of potential defendants, before the expiration of the statutory period.

In her supplemental opposition memo, Plaintiff raises a further argument that she can benefit from the doctrine of "fraudulent concealment" as a mechanism to toll the limitations period, as was applied in *Balog v. Center Art Gallery–Hawaii,* 745 F.Supp. 1556 (D.Haw.1990). However, in this case third parties refused to identify GE, a situation distinguishable from *Balog* where defendants allegedly induced their agents to fraudulently conceal plaintiff's cause of action so plaintiff would not act upon it within the limitations period. As Defendant GE points out, even accepting Plaintiff's "identification" rule, Plaintiff did discover GE's identity as the putative supplier of silicone gel on or about October 25, 1991, which was still nearly two and one-half years before Plaintiff filed suit against GE.

### ii. *Limitations Period Not Tolled By Dante Class Action*

Plaintiff contends that the filing of the *Dante* class action tolled the statute of limitations on her cause of action against GE because GE, although not originally named as a defendant in *Dante,* was "eventually named." Plaintiff argues that GE, as a *Dante* defendant was on notice of the subject matter and number of potential claims against it and that the authority of *Levi v. University of Hawaii* supports her position that the limitations period was tolled from the date that *Dante* was filed. *Levi,* 67 Haw. 90, 679 P.2d 129 (1984) (adopting rule of *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) that commencement of class action suspends limitations statute as to putative class members if the suit had continued as a class action.).

The court is satisfied that GE was never a defendant in *Dante.* Defendant has demonstrated that certain *Dante* orders, setting scheduling matters and the like, were extended by limited consolidation of actions to non-*Dante* parties in an exercise of judicial economy. The mere fact that GE was included on a listing of "National Defendants" in certain scheduling orders issued under the *Dante* heading, without more, is insufficient to invoke the tolling rule in *Levi* or *American Pipe.* Although GE had been named in certain individual suits which were transferred to the Northern District of Alabama along with *Dante,* and despite the fact that GE may have been on notice of the number and types of claims asserted against the defendants in *Dante* by virtue of GE's receipt of scheduling orders, there is no overriding policy reason for the suspense of the limitations period as against GE where GE was not included as a defendant in *Dante.* The various orders issued in Multidistrict Litigation *In Re: Silicone Gel Breast Implants Products Liability Litigation* do not support the proposition asserted by Plaintiff that GE

was a defendant in the *Dante* case; instead, the orders and pre-trial rulings explicitly recognize the maintenance of separate suits against GE and the fact that *Dante* remained a separate action despite certain common actions taken by the court under the MDL format. *See, e.g., In Re: Silicone Gel Breast Implants Prod. Liab. Litig.,* (MDL–926) ("This order applies to all cases that have been ... transferred to this court.... *Among* those cases transferred to this court under MDL–926 was [*Dante*]....") (emphasis added).

Whereas GE was never a defendant in *Dante,* the mere existence of the *Dante* class action does not support the factual predicate for the holdings of *Levi* and *American Pipe.* In *Levi,* the Hawaii Supreme Court held that the initiation of a class action tolled the limitations period as against members of the asserted class who would have been parties to the suit. *Levi* was based on the circumstance that a defendant named in the failed class action was nonetheless on notice of the subject matter and scope of the potential litigation. Recognizing that a primary purpose of a statute of limitations is to compel plaintiffs to act on claims within a reasonable time, the Hawaii Supreme Court held that the time during which the attempted class action was pending would be excluded in calculating the limitations period. *Levi,* 67 Haw. at 93, 679 P.2d at 131–32. The *Levi* ruling avoids multiplication of actions which would occur if a claimant who sought to become a member of a certified class was forced to file a separate action against *the same defendant(s)* in the event the class was not certified.

iii. *Plaintiff Failed to Rebut Defendant's Demonstration That Sjogren's Syndrome/Mixed Connective Tissue Disorder Is Not A Separate and Distinct Disease From Plaintiff's Earlier Injuries*

■ Plaintiff argues that her cause of action did not accrue until she was diagnosed on our about March 23, 1993 with Sjogren's Syndrome/Mixed Connective Tissue Disorder (hereinafter collectively referred to as "Sjogren's Syndrome") and ·that her complaint was timely filed, within the limitations period. (Pl.'s Mem. in Opp'n at 8–9; Decl. of Hutson ¶ 5, filed June 24, 1996.) Plaintiff relies upon this court's ruling· in *Agles v. Merck & Co.* to support her argument. 875 F.Supp. 701 (D.Haw.1995).[4]

In its Reply Memorandum, Defendant argues that Sjogren's Syndrome is not a separate and distinct disease from those injuries at issue in her lawsuit against Surgitek and. Mentor. Defendant contends that Plaintiff has failed to present any competent evidence to rebut that, and that no new limitations period was triggered.

Defendants contend, and the court agrees, that Plaintiff's reliance on *Agles* is unfounded. In *Agles* this court denied a vaccine manufacturer's motion for summary judgment on the basis of the existence of a disputed factual issue of whether multiple sclerosis was a separate and distinct disease from earlier disease suffered by plaintiff Agles where both injuries were allegedly caused by the same vaccine product. Notably,. in *Agles* the plaintiff avoided summary judgment by presenting evidence from medical professionals that her multiple sclerosis was a separate injury from her earlier injuries of optic neuritis and demyelination. Agles' physicians, who treated her prior to the diagnosis of multiple sclerosis, stated that her optic neuritis and demyelination were not suggestive of multiple sclerosis and that she did not have multiple sclerosis at the time of the earlier consultations. *Agles,* 875 F.Supp. at 706. Agles did not rely merely upon her medical records but introduced then-current testimony of her doctors. In *Agles,* as ·in this case, the burden of demonstrating that Plaintiff's Sjogren's Syndrome is not a separate and distinct disease rests

---

4. For the first time in her Supplemental Memorandum, Plaintiff argues that she should benefit from the Fifth Circuit's holding in *Hagerty v. L & L Marine Services, Inc.,* 788 F.2d 315 (5th Cir. 1986). In *Hagerty* the appellate court held that in toxic chemical or asbestos exposure cases, cancer should be treated as a separate injury for the purposes of statute of limitations. The court declines to extend the Fifth Circuit's ruling to diseases other than cancer merely because they were allegedly caused by toxic chemical exposure.

with the proponent of the affirmative limitations defense—Defendant GE.

· Defendant GE has presented the court with evidence of Plaintiff's statements and pleadings in her lawsuit against Surgitek and Mentor to the effect that she alleged that silicone gel used in the breast implants was defective because "it serves as an antigen in some women, causing a condition known as human adjuvant disorder to occur in those women who have had exposure to free silicone gel in their bodies following gel bleed or rupture of the implant." (Def.'s Concise Statement ¶ 6–7, Ex. 5 at 20 (Pl's Resp. to Def. Surgitek, Inc.'s Req. for Interrogs. dated May 21, 1990)). The court finds that Defendant GE has met its initial burden as the movant by demonstrating for the court that as of May 21, 1990, at the latest, Plaintiff understood that there could be serious autoimmune injuries as a result of the rupture of her breast implants and her exposure to free silicone gel and that she had a cause of action based upon that injury.

As set out above, under the standard of review applied by federal courts to motions for summary judgment, once the moving party meets its initial burden of presenting the court with an absence of a genuine issue of material fact on a particular matter before the court, the burden shifts to the non-moving party to make a counter-demonstration that there indeed is a disputed matter of fact which is material to disposition of the case and which requires a trial for resolution. *T.W. Electrical Serv.*, 809 F.2d at 630.

In this case, Defendant has shown by Plaintiff's prior conduct and statements that she was aware as early as May 21, 1990, of a possible injury of the kind for which she seeks recovery from Defendant GE. The court's inquiry now turns to whether Plaintiff has rebutted Defendant's demonstration by presenting the court with admissible evidence of specific facts which show that, indeed, there is a need for a trial to resolve the issue of whether another limitations period

was triggered by Plaintiff's Sjogren's Syndrome. Fed.R.Civ.P. 56(e).

### a. Form of Affidavits

■ As Defendant points out, the Declarations of Hutson fail to meet the requirements of Fed.R.Civ.P. 56(e), that affidavits submitted in opposition to motions for summary judgment must be made upon actual personal knowledge and set forth facts that would be admissible in evidence. Plaintiff's comment at the hearing that if Defendant supplied hearsay evidence in their affidavits [5] that she should have been permitted to do so as well misses the issue concerning the defects in the Hutson Declarations. Hutson, as Plaintiff's counsel, is not competent to testify or make affidavits asserting medical facts such as whether Plaintiff was or was not diagnosed with a "recognized silicone related illness" before she settled her first lawsuit (Hutson Declaration filed June 24, 1996, ¶ 4), whether Sjogren's Syndrome and Mixed Connective Tissue Disorder are "both recognized silicone-related illnesses" (*Id.* ¶ 5), whether Plaintiff's test results supplied as Exhibit C to Hutson's Declaration filed July 8, 1996, constituted "the first test showing objectively that Plaintiff may have Sjogren's disease" (Hutson Declaration filed July 8, 1996 ¶ 4), and whether the subjective clinical note attached as Exhibit D constituted "the first clinical note in which a physician states that Plaintiff is suffering from Mixed Connective Tissue Disease." (*Id.* ¶ 5). *Compare Narum v. Eli Lilly and Co.*, 914 F.Supp. 317 (D.Minn.1996). In *Narum*, the court ordered stricken the affidavit of plaintiff's counsel's paralegal, who was also a registered nurse, offered in opposition to Eli Lilly's motion for summary judgment. The *Narum* court held that the paralegal's affidavit contained improper evidence culled from her review of plaintiff's medical records and ordered that the affidavit be stricken for lack of foundation, lack of personal knowledge, and for the inclusion of inadmissible hearsay. *Id.* at 321. In this instance, as with the

5. At the hearing, Plaintiff's counsel made a general objection to hearsay statements offered as evidence in support of Defendant's Motion for Summary Judgment. Upon review of the affidavits and supporting materials offered by Defendants, the court is satisfied that the materials presented are admissible evidence which is either non-hearsay, such as admissions by a party-opponent, or admissible as exceptions to the hearsay rule, such as statements for medical diagnosis/treatment or business records. Fed.R.Evid. 801, 803.

paralegal/nurse affiant in *Narum,* Hutson is not competent to testify at a trial regarding the medical facts and/or conclusions presented in her Declarations.

### b. Defendant's Motion to Strike Declarations of Joy A. Hutson

■ Due to the lack of foundation of medical expertise, lack of personal knowledge, and presentation of inadmissible hearsay, paragraphs 4 and 5 in the Hutson Declaration dated June 20, 1996 (filed June 24, 1996), and the statements "which was the first test showing objectively that Plaintiff may have Sjogren's disease" and "the first clinical note in which a physician states that Plaintiff is suffering from Mixed Connective Tissue Disease" contained in paragraphs 4 and 5 of the Hutson Declaration of July 6, 1996 (filed July 8, 1996) are not taken into account by this court in assessing the evidence in opposition to Defendant's Motion for Summary Judgment. This determination does not affect the remainder of the Hutson Declarations or the medical and court records attached as exhibits thereto. Whereas the court has not taken the objectionable material into consideration in ruling upon Defendant's Motion for Summary Judgment, but the court desires that the court files reflect the Hutson Declarations in their complete form, the court DENIES Defendant's Motion to Strike.

Setting aside the objectionable portions of the Hutson Declarations, the court is left to consider the remaining evidence produced in opposition to Defendant's Motion for Summary Judgment, including the various medical and court records. Upon review, the court finds that Plaintiff has failed to demonstrate that there remains a dispute that Plaintiff's Sjogren's Syndrome/Mixed Connective Tissue Disorder is a separate and distinct disease from those injuries of which she had known or should have known at the time she filed suit against Surgitek and Mentor, or at the latest as of May 21, 1990, the date on which Plaintiff supplied her answers to interrogatories in the earlier lawsuit.

### C. *CONCLUSION*

The court concludes that Plaintiff's claims against Defendant for personal injury accrued when Plaintiff discovered or should have discovered her injury caused by the silicone gel released into her body. Plaintiff's causes of action accrued upon her discovery of the injury, not the identity of Defendant GE as the putative supplier of the gel used in Plaintiff's implants. In any event, even if Plaintiff's causes of action for personal injury accrued upon the date she discovered GE's identity (on or about October 25, 1991) her claims became barred two years thereafter, or on or about October 25, 1993.

The court concludes that the limitations period(s) was not tolled by virtue of the initiation of the *Dante* class action. Finally, the court concludes that it has been presented with no competent evidence to demonstrate that a material factual dispute exists that requires a trial on the issue of whether Plaintiff's diagnosis with Sjogren's Syndrome/Mixed Connective Tissue Disorder is a separate and distinct injury which triggered a new limitations period.

Whereas Defendant has demonstrated that Plaintiff's claim for personal injury accrued before October 25, 1991, Plaintiff's claims against Defendant GE for such injuries are barred by operation of the two year statute of limitations. Haw.Rev.Stat. § 657–7.

■ In a similar manner, the court finds that Plaintiff's breach of warranty claims are barred by operation of the four year statute of limitations applicable to such claims, which period ran at the latest, four years from January 20, 1989, the date Plaintiff had her ruptured breast implants removed from her body. Accordingly, Plaintiff's claims based on breach of warranty became barred by operation of Haw.Rev.Stat. § 490:2–725 on January 20, 1993.

Plaintiff is barred from pursuit of this action against Defendant GE by operation of Haw.Rev.Stat. §§ 657–7 and 490:2–725. For that reason, the court GRANTS Defendant's Motion for Summary Judgment on all claims.

IT IS SO ORDERED.